## RUKAVINA et al v. IND. COM. OF UTAH et al.

No. 4401.  Decided August 4, 1926.  248 P. 1103.

1

■

*Walton, Walton & Nelson,* of Salt Lake City, for plaintiffs

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

STRAUP, J.

Joseph Sarich, an employe of the Utah Consolidated Mining Company, was injured in the course of his employment September 20, 1923, and as a result of such injury died October 11, 1923. On October 1, 10 days before his death, he was married to Manda Rukavina, who had living with her four minor children, Katie, Nick, Mary, and Matilda, from 8 to 15 years of age, children by a former husband. After the death of Joseph Sarich, Manda Sarich, the mother of the children, claiming to be his wife, on November 2, 1923, applied to the Industrial Commission for compensation under our Workmen's Compensation or Employers' Liability Act

(Comp. Laws 1917, §§3061-3165, as amended). She was denied compensation, which order of the commission was on review affirmed by this court, holding that the statute declaring a wife to be dependent for support upon the husband was not applicable, where the wife of the deceased employe married him shortly before his death, and while he was in a hospital mortally injured and not living with him. *Sarich v. Ind. Comm.*, 64 Utah, 17, 227 P. 1039, 35 A. L. R. 1062.

Thereafter, on September 9, 1924, and within a year after the death of Joseph Sarich, the minor children above mentioned, by their next friend, Manda Sarich, their mother, filed a petition before the commission, seeking compensation as dependent children of the deceased. The mining company answered, and moved the commission to dismiss the proceeding on the ground of its special plea of res adjudicata. The commission denied the motion, whereupon the mining company from such order prosecuted a review to this court, before the commission had passed on the merits of the minors' petition, and before any order was made respecting an allowance or disallowance of compensation. On such review this court held that the company's application for review was premature, and dismissed it. *Utah Con. M. Co. v. Ind. Comm.* (Utah) 240 P. 440.

Thereafter a hearing was had before the commission on the issues presented by the minors' petition and the answer of the company, including its special plea of res adjudicata, with the result that the commission found and ordered that the plea of res adjudicata was well taken, and further found and ordered that the minor children were not children of the deceased, nor members of his family, nor dependent upon him for support, and thus denied them compensation. As to the plea of res adjudicata the commission found:

"The commission finds that the minors in the present proceeding are precisely the same as in the first proceeding, and although the minor children were not mentioned as applicants in the title of the original application for compensation, yet they were so included in the titles of all subsequent proceedings therein before this commission. They were represented at the former hearing by the same next friend who

now represents them, and by her representative, George Bielich. At the opening of the former hearing their claim for compensation and right to compensation were stated as issues, and their next friend and representative agreed and stipulated that those were the issues in the case, and those issues were precisely the same as those in the present application. Substantially the same evidence that was introduced in the last application was introduced in support of their claim in the former application to show dependency and membership in family. The commission considered the claim of the minors for compensation in the former hearing and expressly denied it. Walton, Walton & Nelson, the attorneys for Manda Sarich, as widow and also as next friend of the minors, applied for a rehearing, which was denied."

## In that connection the commission further found:

"The minors are represented in the second application in substantially the same manner as in the first application; that is, by their mother as next friend. The evidence in support of the second application, although longer, is substantially the same as in the first application, and all of the evidence introduced in the second application could have been introduced by the next friend of the minors in the first application, if she had seen fit to offer it. The second application is substantially similar to the first, and is in substance and effect merely a repitition of the first. After further consideration and hearing the commission feels that the defense of the Utah Consolidated Mining Company that the proceedings under the first application are a defense to the second application as res adjudicata should be sustained."

## As to the issue of dependency the commission found:

"The testimony offered by the applicants claimed that the deceased, Joe Sarich, stated, when he first commenced living with the mother, that he would support the minors, and that he would treat them as members of his family, and that they were entirely dependent upon him, and that Salt Lake county immediately—that is, in January, 1923—discontinued payments to her as a mother dependent on her own efforts for support, because Joe Sarich was supporting all of them. But the commission feels, and so finds, that the testimony cannot be believed. The commission feels that, where a cohabitation by a man and woman is begun so unceremoniously as Manda herself describes this case, it is incredible that the man would or did make such ceremonious statements regarding the children. Moreover, the evidence shows beyond all question of doubt that Manda Sarich continued to receive support as a mother dependent on her own efforts for support through June, 1923, or six months after she testified such pay-

ments had been discontinued. The evidence also shows beyond doubt that additional checks were sent by Salt Lake county to her in July and August, but never called for, and that further payments were stopped by Salt Lake county because the checks were not called for, and not because Joe Sarich was supporting them.

"The commission finds that, although Joe Sarich may have made casual and irregular gifts or contributions for the benefit of the children, the minors were not dependent upon him for support. The commission further finds that the facts and circumstances show that this is not a case where a man and a woman have created and kept intact for a substantial period, although without marriage, a bona fide family group, in which minor children are included, but that it is a case of illicit and promiscuous cohabitation, in which no bona fide group was contemplated, and that their inclusion was merely incidental to the illegal cohabitation, because necessarily these children must accompany their mother, wherever she may live. Joe Sarich lived with Manda, and incidentally with the minors, only from January to May, during which time she was receiving contributions as a dependent mother from Salt Lake county. It must be presumed that these contributions were used for the legal purpose. During June to September, Joe Sarich did not live with Manda or the minors, but was at a distant point. In September Joe Sarich lived with Manda, and incidentally with the children, for a few days only. The period of living together was too brief and unceremonious to be evidence of any sincere intention to create a bona fide family group, and, on the contrary, evidenced nothing more than a disposition to temporay, interrupted, and illegal cohabitation. The commission finds that the minors were not members of the family of Joe Sarich, and are not entitled to any compensation as such. The commission also concludes that the minors were not dependent upon Joe Sarich for support."

From the order disallowing compensation, the minors have presented the record of the commission to this court for review, claiming that the findings of fact are contrary to the evidence, and not supported by it and that the conclusions reached by the commission in law are erroneous. We shall consider the proposition of dependency first, for, if that is found against the petitioners, it is unnecessary to consider the plea of res adjudicata.

It was shown without any substantial dispute that Manda Rukavina, the mother of the petitioners, and the deceased,

in January or February, 1923, about nine months before his death, without being married to each other began unlawfully living with each other in Bingham Canyon, where the deceased then was employed. She testified that before such relation began she and the children were supported by the county, getting from $20 to $25 per month from the county, but that such contributions ceased after she and the deceased started living together, and that she did not receive anything from the county from about January, 1923, to the time of the hearing, and that after she and the deceased started to live together he supported her and the children (except Mary, whose rights on this review are disclaimed) until his death. But the records of the county show that, upon her affidavit that the children were wholly dependent upon her for support and that she was unable to support them, the county continued to make payments to her of from $20 to $25 a month from January to August, 1923, but that the checks for July and August were returned uncalled for and thereupon were cancelled.

Other evidence was given to show that at a store where Manda Rukavina had traded from May to October, 1923, and an account carried in her name, the deceased on September 20, the day he was injured, paid the storekeeper $35 on the account, and directed him to transfer the account from "Manda Rukavina to Joe Sarich," and that the deceased at another store purchased shoes and clothing for the children. One of the children testified, as also did the mother, that when the deceased and her mother and the children were living together they lived in one house, ate at the same table, that the deceased paid the living expenses and rent, and bought clothes for the children, and when he went away (several months in Idaho) he sent money to the mother for such purpose, and that since the death of the deceased the children were required to go out and work, which they did not do when the deceased was living with them.

The landlord, a relative of the deceased, in whose house the mother and the children and the deceased lived for sev-

eral months, testified that they all lived together in the house for about three months, and that the deceased paid the rent, and that about three days before the deceased started to live with Manda Rukavina he told the witness that he "would also take the children." Another witness testified that the deceased and Manda Rukavina and the children for another period lived in his house, and that the deceased paid the rent, and that he was living with Manda Rukavina as man and wife, and that the deceased treated the children well, and bought clothes and provisions for them, except when the deceased was in Idaho, during which time the mother paid the rent with money, as he was told, sent to her by the deceased. Another witness testified that during the summer of 1923 the deceased, at Salt Lake City, left with the witness $35 to be sent to the mother in Bingham.

We have thus referred to what the petitioners claim to be the more important facts testified to, and upon which the claim is made dependency was established, without any substantial conflict in the evidence, and that the case in its essentials is identical with the case of *Utah Fuel Co. v. Ind. Comm.*, 64 Utah 328, 230 P. 681, and thus is controlled by it. In the latter case it was held that, under the Compensation Act, one to be a member of a family and a dependent entitled to compensation was not necessarily required to show blood relationship between him and the deceased, but that the claimed dependent must have been a member of the deceased's family in such manner as to show that there was some legal or moral obligation on the part of the deceased to support the claimed dependent. There the deceased employe took a woman and her child about four years of age to live with him at his residence or home. The employe and the woman were not married to each other, but they lived together at his residence as husband and wife for six years and until his death. During that time he held the woman out and introduced her as his wife, and held out and introduced the child as his child. He gave the child his name, sent it to school, where it was registered in his name and as his child,

and maintained and supported it in all respects as his child, and in the community where the employe lived the woman was reputed to be his wife, and the child his child. Under such circumstances this court held that there was at least a moral, if not a legal, obligation on his part to support the child and that it was "reasonable to conclude that, had he lived, he would have continued to support the child and give it such advantages as its condition in life warranted, and as the deceased had done for a period of six years."

We think the two case on their facts are dissimilar, and hence require different rulings. About the only similarity in the two cases is that the employe and the woman lived together without being married to each other. But the manner in and the conditions under which they lived together were quite dissimilar. In the former case the commission found that for a substantial period, for six years, there existed a bona fide family, of which the child was a member, and of which the deceased was the head, the householder, and held the child out to the world and recognized it as his child. Here the commission made findings of an opposite character. True, they are assailed. The question now is not whether there was sufficient evidence to support a finding of dependency. Though it be assumed there was, still the further question is whether the evidence is of such character as not only to justify such a finding in favor of the minors, but to demand no other finding. In other words, if on the record the commission, as to the issue of dependency or as to any other material issue, could properly have found either for or against the petitioners, we may not disturb the findings, no matter which way the commission may have found upon the issue.

It is undisputed that the deceased in January or February, 1923, without being married to Manda Rukavina, started to live and cohabit with her at her home, and there lived with her and the children for three or four months, when he went to Idaho, and did not live with her thereafter, except

a few days before he was injured. And there is evidence to show that, while he was living with her, he supported the children, paid the rent, and that they lived together as man and wife, and during such period he treated the children as though they were his children. Let it be assumed that such testimony, in and of itself, or in connection with the other testimony heretofore referred to, was sufficient to justify a finding of dependency in favor of the children; still the question is whether, on the record, and upon a consideration of all the facts and circumstances in evidence, such a finding and no other was demanded.

The contention made is in the affirmative, but that the commission arbitrarily disbelieved and disregarded such testimony, especially the testimony of the mother and of one of the children. It may readily be conceded ∎ on a trial of issues of fact the commission, like any other trier of fact, whether court or jury, is the sole judge of the facts, and the credibility of the witnesses, and the weight to be given their testimony; still, like a court or jury, the commission is required to take as true undisputed or uncontradicted testimony or evidence, if not opposed to probabilities or common knowledge, or not contrary to natural or physical law, or inherently improbable, or inconsistent with facts and circumstances in evidence, or contradictory in itself, or the witness from whom comes the testimony impeached or otherwise discredited, or the testimony comes from those directly interested, and from the nature of things it is impossible to secure opposing testimony, as where a witness testifies that a person made a statement or declaration not in the presence of anyone except the witness and since deceased. If none of these, or an equivalent, is made to appear, of course the testimony of a witness may not be disbelieved or disregarded. In other words, the commission may not, any more than a court or jury, arbitrarily or capriciously disbelieve or disregard testimony or evidence.

Here the testimony respecting dependency in the main comes from the mother and one of the children, who were

directly interested, and have motives to testify as they did. Of course, for such reason alone, their testimony was not to be disbelieved or disregarded. Nor may it in and of itself, be regarded as insufficient upon which to make a finding of dependency. Still their interest and motive were important elements in determining the weight to be given their testimony, when considered in connection with all other facts and circumstances in evidence. As against the testimony of these witnesses, that the children for the time stated were dependents upon the deceased and were wholly supported by him, is the record of the county. With such direct evidence before the commission, contradicting the testimony of such witnesses, the commission had the right to disbelieve their testimony, or at least to make a finding contrary thereto.

Though the deceased for several months contributed to the support of the children, by buying shoes, clothing, and provisions for them, and paid the rent, yet not anything is made to appear to justify or warrant a finding that he at any time held the mother out as his wife, or the children as his children, or to justify a finding that he was under even a moral obligation to support them, or had assumed or undertaken to do so. During the time that he lived with them, he, in a sense, lived with *them,* and they not with *him;* that is, he went to their home, and they not to his. He had none. The most that can be said is that for several months he lived with the mother's family, but not that he was a member of or the head of the family, or that the family in any sense was his family. He merely temporarily entered the household of Manda Rukavina and her children, and lived with them for several months, primarily, as on the record may be inferred, and as was found by the commission, in furtherance of his illicit relations with the mother, and not in any sense in loco parentis of the children, or otherwise to take charge of them, or to assume or undertake to support or maintain them.

The testimony of a witness, a relative of the deceased, is pointed to that the deceased, several days before he started

living with the mother, declared that he "would also take the children." The commission probably did not give, as it had a right not to give, much weight to such mere loose language. And then, the declaration not having been made in the presence of any one except the witness and the declarant, since deceased, no means was afforded to controvert such testimony by any direct evidence of a similar character, and in such case it often is impossible to secure any kind of opposing testimony or evidence. The commission thus was not bound to accept the testimony of the witness as true, merely because it was uncontradicted, but were required to consider it in connection with all the facts and circumstances in evidence, and to give it such weight as they thought it entitled to, and in doing so may have regarded it, as they could, of but little weight, or at least not of sufficient importance to influence or aid a finding on any of the material issues.

From these considerations it follows that we are of the opinion that the evidence in the records is not of such character as to require or demand only a finding of dependency, and not to justify a contrary finding, or the findings as made by the commission on the subject. Having reached such conclusion, it is unnecessary to review the ruling, or to express an opinion respecting the plea of res adjudicata.

The order of the commission is therefore affirmed.

GIDEON, C. J., and THURMAN and CHERRY, JJ., concur.

FRICK, J. I concur in the judgment affirming the action of the commission. I am of the opinion, however, that in passing upon the powers of the commission in making findings upon the evidence the opinion in the instant case is in conflict with the case of *Kavalinakis v. Industrial Commission* (Utah) 246 P. 698, where that question was very carefully considered, and where the powers of the commission in making findings are fully defined.