BRADSHAW v. INDUSTRIAL COMMISSION et al.

No. 6509.   Decided April 9, 1943.   (135 P. 2d 530.)

*O. H. Matthews*, of Salt Lake City, for plaintiff.

*Grover A. Giles*, Atty. Gen., and *A. U. Miner*, Asst. Atty. Gen., for defendants.

McDONOUGH, Justice.

Plaintiff brings this proceeding to review the findings and decision of the Industrial Commission denying his application for compensation as an alleged dependent of Claude David Bradshaw. There is no dispute as to the fact that Claude David Bradshaw was a son of applicant, and that said son died on September 30, 1941, as a result of accidental injuries sustained in the course of his employment in one of the mines of defendant Utah Fuel Company, a self-insurer, at Castle Gate.

The sole question in dispute before the commission was whether or not the applicant who was not residing with his son at the time of the accidental death of the latter, was actually either wholly or partially dependent on said son for his support. Plaintiff contends that the findings and conclusions of the commission to the effect that the applicant was neither wholly nor partially dependent on Claude David Bradshaw for support, was made arbitrarily and contrary to the undisputed evidence; that only one conclusion could reasonably have been drawn from the evidence, namely, that the applicant was at least partially dependent on his son for support.

Whether or not the commission failed to arrive at the only conclusion which could have been drawn reasonably and judiciously, depends not merely on whether the evidence is undisputed, but whether or not reasonable minds might differ as to the inferences to be drawn therefrom. As stated in *Rukavina* v. *Industrial Commission et al.*, 68 Utah 1, at page 8, 248 P. 1103, 1106:

"* * * It may readily be conceded that on a trial of issues of fact the commission, like any other trier of fact, whether court or jury, is the sole judge of the facts, and the credibility of the witnesses, and the weight to be given their testimony; still, like a court or jury, the commission is required to take as true undisputed or uncontradicted testimony or evidence, *if not opposed to probabilities or common knowledge*, or not contrary to natural or physical law, *or inherently improbable, or inconsistent with facts and circumstances in evidence, or contradictory in itself, or the witness from whom comes the testi-*

*mony impeached or otherwise discredited, or the testimony comes from those directly interested, and from the nature of things it is impossible to secure opposing testimony,* as where a witness testifies that a person made a statement or declaration not in the presence of anyone except the witness and since deceased. *If none of these, or an equivalent,* is made to appear, of course the testimony of a witness may not be disbelieved or disregarded. \* \* \*" (Italics added.)

The only direct testimony on the issue involved is that of the applicant who is about 55 years of age, whose eyesight was impaired by a misfortune, and who has been unable to earn very much for over 15 years because of his probable permanent disabilities. He was unemployed at the time of hearing. In 1935 his son Claude furnished him about $300 to go in the ice business at Coffeeville, Kansas. The plaintiff injured his right eye in 1937 and in 1938 he sold the business, using the proceeds for his maintenance. He testified that from 1939 on his son Claude practically supported him until the fatal accident; and that because his other son is married, he looked to Claude for support, although at the time of hearing he was being supported by the county in which he resided.

As to the amounts of money sent to him from Claude, the applicant was not very definite. He stated that his son had traveled around a great deal, in California, New Mexico, and elsewhere; that he last saw Claude in Joplin, Missouri, in 1940. He testified that in 1939 Claude sent him "quite a little money at different times," $10, $20 or $30 per month. The applicant heard nothing from his son after April or May, 1941, when he sent $30 from San Diego. He stated that his son generally followed construction jobs and moved from one state to another frequently.

There was introduced in evidence a record of wages credited to the social security account of decedent. No evidence was offered to show any employment in fields not subject to social security reports. The social security record shows that deceased had wages reported amounting to only $100.66 in 1937, none in 1938, $670.84 in 1939, $509.90 in

1940, and $163.25 in 1941 to September 30 when death occurred.

The applicant appeared to have no definite recollection as to the amount of money allegedly received from his son in any year. He did not specifically testify that he received any in 1940 or anything in 1941 except $30, although he testified his son wrote to him about once each week. However, plaintiff admitted that sometimes his son did not write for months. The applicant seemed to have only a vague recollection of either when or from what places he received money from his son, or even in what amounts. Other than $300 given to purchase an ice business in 1935, and "$10, $20 or $30 per month" in 1939, and $30 in April or May 1941, no positive testimony was offered as to any money being sent to plaintiff at any time or in any amount. He did not even indicate how much was sent in each year.

Although the social security record does not establish as a fact that the totals there shown were the total earnings of the deceased, such record constitutes the only evidence presented on earnings. Reference to such record might well entitle reasonable minds to conclude that Claude was having such a struggle to support himself that what little he did earn would probably be needed for his own living expenses and to travel from one job to another.

Counsel for plaintiff cite cases in which this court has upheld findings and conclusions of the Commission that the applicant was wholly or partially dependent. This is not such a case, and we are called on by plaintiff not to uphold the decision of the Commission, but to set it aside. Conceding that counsel are right in saying the evidence is such that the Commission might well have found plaintiff was partially dependent on his son for support, the fact remains that the Commission found otherwise and we cannot disturb the findings and decision unless the conclusion reached by the Commission is untenable.

In *Globe Grain & Milling Co. et al.* v. *Industrial Comm.*, 57 Utah 192, 193 P. 642, 644, in discussing the question here

involved, this court held that dependency must exist at the time of the injury of the workman which results in his death. In stating the rule so announced, the court said:

"We remark that no hard and fast rule can be laid down which will control in all cases. Nor do we wish to be understood as holding that in order to prove dependency it must be shown that the contributions were made at the precise time of the injury. What we hold is that each case must, to a large extent, be determined upon its own particular facts and circumstances. To establish dependency, however, it is not sufficient merely to show that the deceased made some voluntary gifts or contributions at some remote time prior to the injury."

In view of the rather vague memory of the witness as to time and amount of contributions, and the only evidence introduced as to earnings of his son, we cannot say that the Commission was bound to conclude that the son had the financial ability to support his father even in part; that there was reasonable basis for the father to anticipate financial support from him; and that applicant was in fact a dependent on his son at the time of the latter's death.

The decision of the Industrial Commission is affirmed.

WOLFE, C. J., and LARSON, MOFFAT, and WADE, JJ., concur.