## ÆTNA LIFE INS. CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4164.    Decided December 2, 1924.    (231 Pac. 442.)

1.  MASTER AND SERVANT—FINDING OF FACT BY INDUSTRIAL COMMISSION, ON SUBSTANTIAL EVIDENCE, CONCLUSIVE.  Finding of fact by Industrial Commission, supported by substantial evidence, is conclusive.

2.  MASTER AND SERVANT—AWARD MUST BE SUPPORTED BY SUBSTANTIAL EVIDENCE.  Finding of material facts, to be sufficient to sustain award, must be supported by substantial evidence, and, though such evidence need not be direct or positive, there must be a reasonable theory which leads to conclusion reached.

3.  MASTER AND SERVANT—EVIDENCE HELD INSUFFICIENT TO SUSTAIN FINDING STRAIN WAS "PROXIMATE CAUSE" OF HERNIA.  Evidence *held* insufficient to sustain finding that hernia, immediately following particular exertion or strain, in fact resulted from similar, but lesser, strain previously sustained by employé.

4.  MASTER AND SERVANT—DISABILITY MUST BE ATTRIBUTED TO ACCIDENT.  Consequences of injury and disability must be attributed to accident as proximate cause.[1]

Writ of review by the Ætna Life Insurance Company to review order of Industrial Commission of Utah awarding compensation to Russell Worthen, and declaring plaintiff, rather than the Travelers' Insurance Company, liable therefor.

AWARD ANNULLED.

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

CHERRY, J.

[1] *Continental Cas. Co.* v. *Industrial Commission,* 63 Utah, 59, 221 P. 852.

See (3) 32 Cyc. 745.

Russell Worthen sustained a hernia while employed by Westinghouse Electric & Manufacturing Company. After a hearing, upon his application for compensation, the Industrial Commission made an order awarding him compensation against the employer, and against the plaintiff herein as insurer. The plaintiff has brought the case here by writ of review, contending that the accident and disability of the employé for which compensation was awarded, did not occur when its contract of insurance was in force. In May, 1923, the employer's liability was insured by the plaintiff, and in February, 1924, by the defendant the Travelers' Insurance Company.

The findings and conclusions of the Industrial Commission were as follows:

"I.

"Russell Worthen, applicant herein, was regularly employed by the Westinghouse Electric & Manufacturing Company on May 8, 1923, and has continued in their employ from that date to the present time. That while in the course of his employment, on May 8 and 9, 1923, he was engaged in moving from a box car the household effects of Mr. Craig, his immediate superior. That the household effects of Mr. Craig were being moved from Denver, Colorado, to Salt Lake City, at the company's expense. That, while the applicant and another employé of the electric company were lifting a box weighing from 100 pounds upward, and endeavoring to raise it to a distance of about 6 feet, he felt a pain in his side, of sufficient severity to cause him to let the box down. That he became faint, nauseated at the time, and told his fellow employé that he had injured himself. From that date up until the 16th day of February, 1924, he has continuously suffered pain whenever required to exert himself in any manner. On the date last mentioned, while in the course of his employment, and engaged in pulling a larry car, weighing some 600 or 700 pounds, he suffered a recurrence of the pain in his right groin, which he first suffered on May 8 or 9, 1923, and which he has suffered at all times subsequent to May, 1923, when required to exert himself. That on February 16, 1924, the pain was more severe than usual. That he suffered the same symptoms of faintness and nauseau which he had previously suffered on exertion. That shortly after this injury he went to the toilet and made an examination of his right groin, discovering a small lump. That he later told his fellow workmen of the discovery of the lump and his injury. He continued with his shift, doing light work, this being Saturday. He was ill Sunday

reported for work Monday, and told his employer, Mr. Craig, of his injury on February 16th, this being the first time he had reported an injury to his employer. That he was instructed by his employer to do no heavy lifting, and to consult a doctor. On Tuesday he consulted Dr. H. B. Felts, who found an inguinal hernia with a protruding sac. This last-mentioned date, February 16, 1924, was the first time that applicant had been able to discern a lump or swelling in the groin, either by feeling or by sight. Dr. Felts testified that, in his opinion, had he examined applicant prior to February 16, 1924, by inserting his index finger in the external right of the inguinal canal, as is usual in examining for hernia, he would have found an impulse on the applicant's coughing. This would be evidence of a sac being formed and descending into the inguinal canal. It was the doctor's opinion that this condition had its incipiency in the injury which the applicant sustained on May 8 or 9, 1923. This is undisputed by any other testimony.

"II.

"The wage earned by the applicant on May 8 or 9, 1923, was $9 per week, working six days. On February 16, 1924, applicant's wage had been increased to $12 per week. That the Westinghouse Electric & Manufacturing Company is an employer of labor, and was, on the dates of the injuries alleged in this case, subject to the Workmen's Compensation Act of the state of Utah. That at the time of the first injury the Ætna Life Insurance Company was the insurance carrier of the electric company. That on the date of the second injury the Travelers' Insurance Company was the insurance carrier of the electric company.

"Conclusions.

"In view of the foregoing facts, the Commission concludes that applicant herein sustained an injury by reason of an accident arising out of or in the course of his employment on or about May 8 or 9, 1923, and that on February 16, 1924, he suffered an aggravation of the former injury, and that therefore the Westinghouse Electric & Manufacturing Company or the Ætna Life Insurance Company, who was the insurance carrier of the electric company on the date of the first injury, should pay the compensation, including the medical treatment, as provided for in the State Industrial Act.

"This conclusion is based upon what the Commission feels to be the law of this state, as settled by our Supreme Court in the case of *Continental Casualty Company* v. *The Industrial Commission of Utah*, in the case commonly known as the 'Sabey Case,' where the said court quoted approvingly from page 871 of L. R. A. 1918F: 'Incapacity which is caused or aggravated by a second injury, received while the employé is suffering from another injury which

he received in his employment, is the result of the first injury, and consequently compensation may be recovered therefor.' "

It is admitted that the employé is entitled to compensation for his injury, but each of the insurance companies claims the other is liable for the payment of the same.

If the accident causing the disability occurred in May, 1923, the plaintiff is liable for the compensation; but, if it occurred in February, 1924, the defendant the Travelers' Insurance Company must be held for the loss.

As before seen, the Industrial Commission found the fact against the plaintiff. If this finding is supported by substantial evidence, the finding is conclusive. Therefore the sole question for decision is whether the finding, that the injury causing disability resulted from an accident happening in May, 1923, is supported by the evidence. The evidence relating to the accident and injury was wholly undisputed, and in substance was as follows:

The employé, in May, 1923, while lifting a box, felt a pain in his right groin, and became faint and sick for a short time. He examined himself, but found no protrusion or lump in his side. He spoke about the matter to his fellow employé, but made no report to his employer. He resumed work the same day, and continued in his employment without "laying off" until February 16, 1924. During the interim his wages were advanced, and he performed his work in the usual manner, although he said he had pains in his side when lifting or doing heavy work.

On February 16, 1924, while engaged in pulling a motor or larry car weighing 600 or 700 pounds, he felt a sudden and severe pain in his right groin, and became faint and sick. He described the exertion or physical strain to which he was subjected on this occasion as twice as great as that of lifting the box on the previous occasion, and the pain and sickness following more severe than in the former case. He retired to a lavatory and examined himself, and found a lump or protrusion on his right groin. No such lump or protrusion had existed there before.

A few days thereafter he was examined by a doctor. The

doctor testified that he found a right inguinal hernia, which disabled the patient and necessitated a surgical operation. With respect to the consequences of the strain and pain occurring the previous May, the doctor said:

"It is all speculation. He evidently received a strain at that time sufficiently severe to produce a pain. Now, whether he strained the internal ring or not I don't know, but he produced some strain on the muscles."

And later:

"Well, of course, my best judgment would be that in May, when the boy was lifting on this box, he probably did put some strain on the internal abdominal ring, judging from what has happened since that time. Now, often a man lifting will get a strain of his side that has nothing to do with producing a hernia."

He described a potential hernia and told how it could be discovered, whereupon he was asked:

"Would you say that was the first time—the lifting of the box in May—that was the first time you would find the potential hernia present?"

He answered:

"Well, I wouldn't say that. He may have gotten a little strain there and a little stretching of the muscles and they may have contracted back to normal condition. And, if he hadn't strained himself after that he might not have sustained a hernia. I can't say positively about that."

Upon the facts shown, the doctor stated no hernia resulted from the accident of May, 1923; that the employé may have had a potential hernia, or the first injury may have predisposed him to the hernia, but that something new must have happened, and did happen, to cause the hernia. In his opinion, the accident of February, 1924, was a sufficient cause to produce the hernia, without any previous condition, and that "it is quite probable that what happened on February 16th was an aggravation of what had been happening before." No operation or treatment is advised for a mere weakness of the abdominal ring or a predisposition to hernia. In this case an immediate operation was required, the necessity for which was caused by the condition immediately following the last strain or injury. The appearance of the

hernia in February, 1924, was not a recurrence, because he had never had a hernia there before.

A finding of a material fact cannot sustain an award, unless the finding is supported by substantial evidence. The evidence need not be direct or positive; it may be by circumstances or other facts from which the fact found may be inferred. But in the latter case the inference must be a legitimate one. There must be a reasonable theory which leads to the conclusion reached. A finding cannot be predicated upon mere surmise or conjecture.

In the instant case the finding was to the effect that the proximate cause of the injury and disability was the first accident. We think this finding is not sustained by any substantial evidence. Proximate cause is defined to be:

"An act which directly produced or concurred directly in producing the injury; an immediate, direct, or efficient cause of injury; that cause which naturally led to, and which might have been expected to produce, the result; that from which the effect might be expected to follow without the concurrence of any unusual circumstances; that which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that which, in a natural and continuous sequence unbroken by any new cause, produces that event, and without which that event would not have occurred; that which stands next in causation to the effect—not necessarily in time or space, but in causal relation; the efficient cause; the one that necessarily sets the other causes in operation; the first direct cause producing the injury; the nearest, the immediate, the direct cause; the cause that sets another or other causes in operation, or dominant cause." 32 Cyc. 745.

The first accident did no produce a hernia. It did not result in disability. It merely produced a pain. According to the doctor something new must have happened, and did happen, to produce the hernia. Admittedly, the first accident alone did not result in a compensable injury. The second accident was sufficient in itself to cause the hernia. It preceded and was immediately followed by the hernia. It was such a cause as might naturally be expected to produce the injury. It stood next in causation to the effect, not only in time, but in causal relation.

There is no question here of conflicting evidence. From the undisputed evidence there is but one conclusion permissible, and that is that the proximate cause of the injury was the second accident.

The rule that the consequences of injury and disability must be attributed to the proximate cause is of universal application. Very often it is difficult to decide what is the proximate cause. "Where there are two accidents, the question of whether the disability should be attributed to the first or second accident depends upon the circumstances of the particular case." 1 Honnold, § 135, p. 516. The Sabey Case (*Continental Cas. Co. v. Industrial Comm.*, 63 Utah 59, 221 P. 852) illustrates the principle, but it was erroneously applied by the Industrial Commission to the facts in the case at bar. In the Sabey Case the employé was first injured by a rock falling on his right shoulder, disabling his right arm. For this injury and disability he was awarded and paid compensation. After being pronounced "surgically healed," he resumed work, and while moving a lever was again injured in the same part. The undisputed evidence was that the last injury was a recurrence of the first, and that such recurrence might come from any movement of the arm. A finding by the Industrial Commission that the injury resulted from the last accident was set aside for lack of evidence to sustain it. The Sabey Case lays down the rule of law which must be and is applied to the decision of the instant case. It merely happens that the evidence in the Sabey Case precluded the second accident being the proximate cause, while the facts in this case preclude the first.

This court is reluctant to set aside a finding of fact made by the Industrial Commission. It will not do so when the finding is fairly supported by legal evidence. There are supposable cases involving the question here presented where the evidence would reasonably support a finding either way on the question of proximate cause, and the finding be sustained. But this is not such a case.

For the reason that the findings and conclusions of the

Industrial Commission complained of are not supported by substantial evidence, the award as against the plaintiff is annulled. Plaintiff to recover costs.

WEBER, C. J., and GIDEON and FRICK, JJ., and ERICKSON, District Judge, concur.