# UTAH COPPER CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4521.    Decided April 28, 1927.    (255 P. 397.)

453

R. G. *Lucas*, of Salt Lake City, for plaintiff.

*Harvey H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst. Atty. Gen., for defendants.

CHERRY, J.

Jim Rombous was accidentally injured while employed by the plaintiff, and afterwards died. Under the Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165), the Industrial Commission awarded compensation in the sum of $1,000, on account of his death, to his partially dependent mother, Mary C. Rombous, a non-resident alien. The plaintiff seeks by this writ of review to annul the award.

The award is admittedly good, unless the dependent's right to compensation was defeated by the conduct of the injured employee in refusing to promptly submit to surgical operation involving the amputation of his leg between the knee and ankle joints.

The deceased employee was injured on November 21, 1924, while at work in plaintiff's mine at Bingham Canyon. At that time he was about 34 years of age, in robust health, of good intelligence, and able to understand the English language. His injury was a compound fracture of both bones of the right leg just above the ankle, with extensive lacerations. He was given first aid and taken to a hospital at Salt Lake City. On November 24, 1924, infection had set in around the wound, and he was advised by the doctor in charge that there was no hope of saving the leg, and that it would have to be amputated, and that, unless the leg was amputated, there was grave danger of the infection spreading and resulting fatally to him. He refused to submit to the operation. The infection continued to spread, and on at least six occasions between November 24, 1924, and December 19, 1924, two reputable physicians advised him

that it was absolutely necessary to amputate the leg or the infection would continue to spread and would kill him. He still refused to submit to the operation. On December 20, 1924, two additional physicians and surgeons, of acknowledged ability and reputation, at the instance of the Industrial Commission, made an examination of the injured employee, and advised him that it was necessary to amputate the leg in order to arrest further infection, and that, unless the leg was amputated, infection would spread and become general and result in his death. He still refused the operation. Thereupon one of the doctors urged the employee to have an examination made by a physician of his own selection. Another physician was accordingly selected by the employee, who examined him on December 24, 1924, and advised him that the amputation of his leg was necessary to save his life. The five doctors agreed and advised that amputation was necessary to stop the spreading of the infection and to save the employee's life, and that the leg could be amputated between the knee and ankle with safety. It also appeared that the employee was informed and understood that the operation would be performed without financial cost to him. He still refused to submit to the operation until the morning of December 31, 1924, when he finally consented thereto. Preparations were immediately made for the operation, but the employee died while on the way to the operating room. No anesthetic was administered or instrument in any wise employed. He died from general and systemic infection.

The Industrial Commission found the facts substantially as above stated. Other facts essential to the award, but not relevant to the question in issue here, were duly found. The commission concluded from the facts that the employee died as a result of the injury, and awarded compensation as before stated. In its conclusions the commission made the further rather inconsistent statement:

"The commission believes that the injured employee, by reason of his refusal to submit to what would appear to be reasonable medical treatment, caused his death. It seems that the injured employee was unreasonable in his refusal. However, notwithstanding this fact, we

do not believe that the commission would have the right under the law to hold that his death was not the result of an accident arising out of or in the course of his employment."

This feature of the commission's conclusions is mentioned because it was referred to in argument. We attach no importance to it, as the award depends upon the findings of fact, and the ultimate conclusion. An award supported by the facts proved and found will not be annulled because the commission gave erroneous legal reasons for its conclusion. This court is bound only by the facts found by the commission, not by its legal conclusions.

The proposition advanced and relied upon by the plaintiff in avoidance of the award is that the refusal of the injured employee to submit to the amputation of his leg, under the circumstances, was unreasonable, and constituted the proximate cause of his death. If the proposition is sustained, the award must be annulled, for it is elementary that compensation is payable only for disability or death proximately caused by industrial accident.

Unless the employee's refusal to promptly submit to the amputation of his leg operated to introduce a new and independent cause of death, there is no difficulty upon the facts here in attributing the death of the employee to the accident. So the question is confined to whether, under all the facts and circumstances, the refusal broke the chain of causation between the accident and the death, and became as a matter of law the proximate cause of the death.

At the hearing it was stipulated by the parties that the doctors who had attended the employee would, if called, testify among other facts and circumstances, that the refusal of the employee to submit to the operation "was unreasonable, as such operation, under the circumstances, was one of which any reasonably prudent man would have taken advantage, and his death could have been averted by the operation, and his death was the direct and proximate result of his refusal to submit to such opera-

tion, which operation was necessitated by the spreading of the infection which set up following the injury."

It is asserted that this stipulation, standing uncontradicted, together with the similar matter contained in the commission's conclusions, established conclusively that the refusal was unreasonable and the proximate cause of death. Not so. The questions of reasonableness and proximate cause constitute the very matter to be tried, and are not subjects upon which expert witnesses may properly express opinions, 3 Jones on Ev. (2nd Ed.) § 1321. These are the ultimate questions for the trier of facts to decide upon the evidence. There is other matter, in the nature of legal conclusions, contained in the record, which it was stipulated that witnesses would, if called, testify to, but it must be disregarded and the case determined upon the facts in the case as found by the commission.

It may be stated as a general proposition that an injured workman will be denied compensation for incapacity which may be removed or modified by an operation of a simple character, not involving serious suffering or danger, to which he unreasonably refuses to submit. Many ■ cases supporting the rule and illustrating its application may be found in annotations published in L. R. A. (N. S.) 1916A, 387; 6 A. L. R. 1260; 18 A. L. R. 431. The type of case in which the rule is applied to defeat compensation is generally where the injured employee himself is claiming compensation for disability, which can be modified or corrected by a simple or minor surgical operation, which he refuses to have performed. The following statement of the rule by Lord McLaren in *Donnelly* v. *Baird*, 1 B. W. C. C. (Scot.) 95, is quoted with approval in many American cases:

"If the operation is not attended with danger to life or health, or extraordinary suffering, and if, according to the best medical or surgical opinion, the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employer from the obligation to maintain him. In other words, the statutory obliga-

tion of the employer to give maintenance during the period of incapacity resulting from accident is subject to the implied condition that the workman shall avail himself of such reasonable remedial measures as are within his power."

See *Lesh* v. *Ill. Steel Co.*, 163 Wis. 124, 157 N. W. 539, L. R. A. 1916E, 105; *Jendrus* v. *Detroit S. P. Co.*, 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A, 381, Ann. Cas. 1915D, 476; *Kricinovich* v. *Am. C. & F. Co.*, 192 Mich. 687, 159 N. W. 362; *McNally* v. *Hudson & M. R. Co.*, 87 N. J. Law, 455, 95 A. 122; Mt. O. C. Co. v. *Ind. Comm.*, 295 Ill. 429, N. E. 103; *O'Brien* v. *Albrecht Co.*, 206 Mich. 101, 172 N. W. 601, 6 A. L. R. 1257; *Strong* v. *Sonken-Galamba I. & M. Co.*, 109 Kan. 117, 198 P. 182, 18 A. L. R. 416; *Henly* v. *O. U. R. Co.*, 81 Okl. 224, 197 P. 488, 18 A. L. R. 427; *Grant* v. *State Ind. Acc. Comm.*, 102 Or. 26, 201 P. 438.

While the rule as above stated is uniformly approved and recognized, it is not always easy to determine whether a particular case is within the rule or not. The cases cited illustrate the application of the rule in a variety of cases, in some of which compensation is denied and in others ordered paid.

The essence of the rule is that an employee must not aggravate or prolong his injury or incapacity by his own unreasonable or arbitrary conduct. But what is unreasonable and arbitrary depends upon the circumstances of each particular case. When he is confronted with submitting to a serious or what is called a major operation, one involving danger to his health or life, the injured employee has a legal and moral right of election.

In *McNally* v. *Hudson & M. R. Co.*, 87 N. J. Law, 455, 95 A. 122, the court stated that it could not be properly said that, where it appears that a risk of life is involved, the refusal of the prosecutor to submit to an operation is unreasonable. In speaking of the duty of an employee to submit to an operation, the court said:

"Although the peril to life seems to be very slight—48 chances in 23,000—nevertheless the idea is appalling to one's conscience that a human being should be compelled to take a risk of death, however

slight that may be, in order that the pecuniary obligation created by the law in his favor against his employer may be minimized."

And the Oklahoma court (*Henly* v. *O. U. R. Co.*, 81 Okl. 224, 197 P. 488, 18 A. L. R. 427) says:

"The rule appears to be supported by the overwhelming weight of authority that no man shall be compelled to take a risk of death, however slight, in order that the pecuniary obligation * * * in his favor against his employer may be minimized."

The correct application of the doctrine to cases like the one under consideration is illustrated by *Jendrus* v. *Detroit S. P. Co.*, 178 Mich. 265, 144 N. W. 563, L. R. A. 1916A, 381, Ann. Cas. 1915D, 476. There the injured employee refused to submit to an operation for rupture of the intestine until it was too late, and he afterwards died. The operation was serious and dangerous. The court held his refusal was not "so unreasonable and persistent as to defeat the claim for compensation by his widow," and that the injured employee was not guilty of "intentional and wilful misconduct."

In *Chandler* v. *Ind. Comm.*, 60 Utah, 387, 208 P. 499, this court held that the refusal by an employee, who had been bitten by a hydrophobic dog, to submit to the Pasteur treatment, and who thereafter died, was not such wilful, unreasonable, and negligent conduct as to deprive his widow and children of compensation for his death.

We are well satisfied that the circumstances of the case before us do not justify denial of compensation because of the delay in consenting to the amputation. The operation was serious and involved, not the risk, but the certainty, of losing the workman's leg. That his refusal to promptly submit was not arbitrary or wilful is attested by his final consent to the amputation. While his reason for refusing does not appear in evidence, it is easily presumed that ■ a workman would hesitate long and hazard much before consenting to the loss of a leg. He could have had no mercenary motive. His compensation in case of a successful amputation and recovery would have been more than double

that to which his partially dependent mother was entitled upon his death. Of course, he erred in his judgment; his life might have been saved. But in his emergency, to say that he acted wilfully or arbitrarily or unreasonably is applying a stricter standard than is found in the statement of the rule of law relating to the subject, and one which no reported case supports. The circumstances here are clearly such as to take the case, not only out of the letter, but the spirit and reason, of the rule which defeats compensation on account of the refusal of the injured employee to submit to treatment or remedial measures for his injury.

The award is affirmed.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.