KELLY v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5190. Decided July 14, 1932. (12 P. [2d] 1112.)

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., for defendants.

CHERRY, C. J.

On April 2, 1925, Thomas Kelly, while employed by Utah-Apex Mining Company, in its mine at Bingham Canyon, sustained an accidental injury. A rock fell down the shaft in which he was working, and struck him on the head. On March 30, 1926, the employee made application to the Industrial Commission for compensation, claiming that he was totally and permanently disabled by the injury. After numerous medical examinations and hearings, the Industrial

Commission on July 14, 1930, made its findings to the effect that the employee was not totally and permanently disabled, but that his disability was so extensive and of such nature that he should be paid compensation at the rate of $16 per week for a period of six years from the date of his injury. An award was made accordingly and the full amount thereof was paid by the employer's insurer.

Thereafter the employee, again claiming that his disability was total and permanent, applied for further compensation to be paid during his life, as provided in such case by Comp. Laws Utah 1917, § 3139. Another hearing was had, after which the Industrial Commission adhered to its former finding that the employee's disability was not total, and denied the application.

The employee contends that the evidence conclusively establishes his total permanent disability and seeks by this proceeding to have the order denying his application annulled and the Industrial Commission directed to award him compensation for life.

It is the plain policy of the Workmen's Compensation Act to vest in the Industrial Commission exclusive power and responsibility of deciding questions of fact. Comp. Laws Utah 1917, § 3148, as amended by Laws Utah 1921, chap. 67, provides expressly that "the findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review," and that the review in this court "shall not be extended further than to determine whether or not: 1. The commission acted without or in excess of its powers. 2. If findings of fact are made, whether or not such findings of fact support the award under review."

In cases like this where compensation has been denied, and the applicant dissatisfied with the decision upon the facts has brought the case here by writ of review, we are committeed to the rule that the review is limited to the question of whether the commission in denying compensation has arbitrarily or capriciously disregarded uncontradicted evi-

dence. *Kavalinakis* v. *Ind. Com.*, 67 Utah, 174, 246 P. 698; *Banks* v. *Ind. Com.*, 74 Utah 166, 278 P. 58; *Rukavina* v. *Ind. Com.*, 68 Utah 1, 248 P. 1103. This is the correct standard, according to the weight of authority, for reviewing such findings of fact made by courts and juries in judicial proceedings. See Annotation "Disregarding uncontradicted testimony in civil actions," 8. A. L. R. 796.

We therefore, upon this review, examine the evidence, not to ascertain what weight or credibility we should give it, not to determine whether in our opinion a different result should have been reached, but whether or not the commission has arbitrarily or capriciously disregarded and refused to follow and give effect to uncontradicted testimony.

The injury to the employee was a blow upon his head by a falling rock, resulting in a depression in the upper occipital part of the skull. There was evidence that as a result of the injury the employee's eyesight was impaired and that he was left with Jacksonian epilepsy or chronic epileptic fits, both of which infirmities are permanent. The question was whether the disability was total and permanent. It is not claimed that the impairment of eyesight alone constitutes total disability. The evidence of the employee and his witnesses on this subject was to the effect that the vision was restricted so that he could only see objects directly in front of him, that he could read a newspaper, "could learn to do lots of thinks," and "train himself to get along and do something." The evidence concerning the employee's affliction with epilepsy consisted of the testimony of the employee himself and several lay witnesses who testified to convulsions had at numerous times, from the descriptions of which the medical witnesses pronounced his ailment as Jacksonian epilepsy, which is usually caused by injury or mechanical irritation of the brain. There was evidence that the employee had attended a course of vocational training in poultry raising at the Agricultural College, furnished by the Industrial Commission. Since his injury he was offered light work by his former employer, but

he refused, not because he was unable to do the work offered, but because no arrangements were made to transport him from the boarding house to and from the mine where the work was to be done. No further effort was ever made by the employee to obtain employment of any kind. There was evidence that the employee was adicted to the use of intoxicating liquor, which, according to the medical testimony, tended to aggravate his malady.

The main evidence relied upon by the employee is the opinion evidence of two medical experts. One of them, a specialist on nervous diseases, stated that from the standpoint of heart, lungs, kidneys, and general health the employee was normal, but from the practical standpoint it was his opinion that he was totally and permanently disabled because no one would employ an epileptic. Another expert witness, who was a specialist on diseases of the eye, nose, and throat, gave it as his judgment that a person who was the victim of epileptic seizures of any kind was totally disabled.

Opposed to this opinion evidence was the testimony of a medical expert, called by the employer, who testified that he had examined the employee and was thoroughly convinced that he could do some work. He also said that he had been a mine physician for many years and knew of epileptics being employed in mines.

The question of whether the employee was totally and permanently disabled was the ultimate matter to be decided by the commission, upon all the evidence in the case. Upon this direct question expert witnesses may not properly express opinions. *Utah Copper Co.* v. *Ind. Com.,* 69 Utah 452, 256 P. 397. Also see Annotation, 78 A. L. R. 755. At least the commission is not bound by such opinion evidence. 22 C. J. 728. In view of all the evidence, and the further consideration that the members of the commission, at the numerous hearings, had personal contact with, and opportunities for observing the conduct of, the employee, it cannot be said that a finding of total

and permanent disability was compulsory as a matter of law. Besides, there was sufficient contrary evidence in the case to raise a conflict upon the ultimate issue, which prevents this court from disturbing the findings made.

The order denying compensation is therefore affirmed.

FOLLAND, J., concurs.

STRAUP and ELIAS HANSEN, JJ., concur in the result.

EPHRAIM HANSON, J.

I concur except as to the statement "that the review (by this court) is limited to the question of whether the commission in denying compensation has arbitrarily or capriciously disregarded uncontradicted evidence." Whether that is a true test of the limitations of the authority of this court in reviewing orders of the Industrial Commission brought here on writ of review, I express no opinion.