TINTIC STANDARD MINING CO et al. v.
INDUSTRIAL COMMISSION et al.

No. 6270.   Decided February 21, 1941.   (110 P. 2d 367.)
Rehearing Denied April 18, 1941.

*Shirley P. Jones,* of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty Gen., for defendants.

LARSON, Justice.

Certiorari to the Industrial Commission to review an award for compensation and hospitalization as a result of injury sustained in employment. On August 7, 1939, Ralph Whitehead was working as a mucker in the Tintic Standard Mine. While climbing down a ladder in the mine he bumped his right hip on a projecting timber. He reported the accident but completed the shift and reported on the next four succeeding shifts, although the man working with him did most of the work for both. The hip then became so painful that he laid off work, was attended by Dr. Stewart, the employer's physician, and on

the 15th day of August was sent to the Bingham hospital, where he remained for some time. The hospital records show diagnosis of and treatment for right sciatica, left sacroiliac arthritis and chronic sinusitis. He also had some congenital deformity in the form and size of one hip bone, in its union with the sacrum, and consequently in the lumbar vertebrae. The commission found that the prolonged disability resulted from his accident of August 7, being superimposed upon his congenital defect, and that applicant was disabled for the whole period as a result of the accident of August 7th. It awarded compensation and hospitalization accordingly. The employer and the insurance carrier bring certiorari, upon the ground that the uncontradicted testimony shows that the disability was caused by disease as a result of nasal infections, and had nothing to do with any accident or injury. This calls upon us to examine the record to see if there is any competent evidence tending to sustain the finding of the commission. If not, the award must be annulled; if so, the judgment must stand for we cannot substitute our opinion as to the preponderance of the evidence for that of the commission. *Chief Consolidated Mining Company* v. *Salisbury*, 61 Utah 66, 210 P. 929; *Spring Canyon Coal Company* v. *Industrial Commission*, 58 Utah 608, 201 P. 173; *Diaz* v. *Industrial Commission*, 80 Utah 77, 13 P. 2d 307; *Maryland Casualty Company* v. *Industrial Commission of Utah*, 74 Utah 170, 278 P. 60; *Aetna Life Insurance Company* v. *Industrial Commission*, 64 Utah 415, 231 P. 442; *Springfield District Coal Mining Co.* v. *Industrial Commission*, 303 Ill. 528, 135 N. E. 792.

There is no purpose in setting forth all the evidence since we do not weigh it. We confine ourselves to the question: What competent evidence is there to sustain the finding of the commission? There is the admitted fact that Whitehead on August 7th sustained a bump on the hip in the course of his employment; that two days later the doctor found a contusion at the point of the injury and prescribed treatments for such condition; that

ordinarily a contusion of that type requires about three weeks, sometimes longer, for a recovery (testimony of Dr. Stewart) ; that for a week prior to the accident applicant had not been disabled nor under doctor's care; that after the injury the applicant was not able to do his work the remainder of that shift nor on the next four shifts although he reported for duty; the hip pained so much he had to lie down while Smith, his work associate, did the work for both (testimony of Merrill Smith) ; the pain became worse, so he was sent to the hospital at Bingham; that he had a congenital deformity in the back at and near the place of the injury. Dr. Richards testified that applicant's ailments when he came to the hospital were diagnosed as "right sacroiliac arthritis with sciatica, possibly aggravated by injury"; that the injury sustained was in the area of the congenital deformity. In response to a question as to whether the ailments discovered in the applicant were of traumatic origin, the doctor answered: "I feel that the conditions we see were primarily *prolonged* in their course by infection" (italics added), and when asked if the treatments given at the hospital were for an infection, he answered that the treatments were to clear up a condition "which had been aggravated by the infection." (Italics added.) The competency of the foregoing evidence is not challenged. Dr. Stewart, when asked if the five-month disability was due to the injury, replied that he could form no opinion as to whether the full five month disability was due to the injury since he had no personal contact with the case after it was turned over to Dr. Richards, but his testimony clearly recognized a causal connection. Dr. Richards was not asked the question, but did say as indicated that the sciatica which he thought an infectious type was "possibly aggravated by injury"; that the conditions of the deformed back which was injured were "prolonged by infection," and were "aggravated by the infection." This evidence does not include a letter, being a report by Doctor Richards to the plaintiffs a year before the hearing,

but not filed with the commission until the day after the hearing, in which the doctor stated that the applicant's pain was in the area of his congenital deformity which "was undoubtedly strained at the time of the injury." That report was made September 12, 1939, to plaintiffs. They now complain that it was error of the commission to receive it the day after the hearing, as they did not have an opportunity to cross-examine the doctor upon it. While of course the commission should not receive evidence on disputed matters where a hearing is held after the hearing is closed, since then a party adversely affected would have no opportunity to meet such evidence, plaintiffs cannot seriously be heard to complain in this matter. The report in question had been in their possession for a year before the hearing and it was made by the doctor to them. They had it and knew its contents, and they put the doctor on the stand, examined him, and he testified to substantially the same facts. The only statement in the letter or report of which complaint is made is that reading, "undoubtedly this area was strained at the time of the injury." They could not be taken by surprise for there is nothing in the letter that they did not already know. They had the doctor testify to substantially the same thing as indicated above. They complain that there is no other evidence of a *strain;* that what applicant received was a *bump.* But strain does not always mean a sprain or an overexertion. Webster's latest dictionary gives the following definition, among others: "the hurt from an injury or from an excessive tension, as of the muscles or nerves." It is clear that this was the sense in which the doctor used the term and in which the commission uses it in the findings. We are not prepared to say that under the circumstances set forth, the letter could not be considered by the commission. However, we think the record without the letter contains sufficient evidence so we cannot say the commission exceeded its authority or acted arbitrarily in making the order. If there are two or more conflicting inferences we may not interpose

our judgment in place of that of the commission. The award is affirmed.

MOFFAT, C. J., and PRATT, J., concur.

McDONOUGH, Justice (dissenting).

I dissent. I am of the opinion that the evidence is insufficient to uphold the decision of the Industrial Commission granting compensation to the applicant for the total period of disability. Since, however, there is some uncontradicted evidence in the record of the applicant having received the bump mentioned in the opinion the question for determination is whether there is any evidence that such bump was the proximate cause of the entire 22 weeks of disability and the hospitalization and medical care given during such period. Sec. 42-1-43, R. S. U. 1933, provides:

"Every employee * * * who is injured * * * by accident arising out of or in the course of his employment * * * shall be entitled to receive, and shall be paid, such compensation *for loss sustained on account of such injury* * * * and such amount for medical, nurse and hospital services and medicines * * * as is herein provided." (Italics added.)

It is only for such loss and such medical and hospital care as are sustained *on account of the accidental injury* that an award may be made.

The appellant at the hearing before the Commission evidently conceded that it was liable for some part of such amount. Its attorney at the outset of the hearing stated: "The point at issue is what proportion of the hospitalization and medical we are responsible for, and what portion the Hospital Fund is responsible for; and on that proportion I suppose is what you would award compensation for the time he was off."

The mere fact that the applicant received the bump, plus the fact that he was thereafter disabled, is insufficient in and of itself to establish the causal connection between such injury and the *total* period of disability—in face of the

fact, testified to by the applicant, that two weeks previous to the date of the injury he was off work for twelve days suffering from pain in the same region, which pain was the result of rheumatism according to the diagnosis of applicant's physician.

Dr. Stewart, as pointed out in the prevailing opinion, had no opinion as to whether the total period of disability was due to the injury. Dr. Richards testified that applicant's sciatica was the infectious type, the source of which, in his opinion, was a sinus infection and nasal condition, and that it was not of traumatic origin. So as to the arthritic condition. His statement that the sciatica and arthritis were *possibly* aggravated by the injury is the only evidence other than the occurrences themselves—if Dr. Richards' letter of September 12 be not considered—which connects the injury and resulting disability. The letter should not have been considered by the Commission without giving opportunity to appellant to have it explained or its statements controverted. In any case, the letter stated merely, in so far as adding to or subtracting from Dr. Richards' testimony at the hearing, that the area of applicant's congenital deformity "was undoubtedly strained at the time of the injury." The extent, nature or probable consequences of such strain are nowhere indicated.

I am of the opinion that the award should be set aside on the ground that there is no competent, substantial evidence to support the same, leaving it to the Commission to determine by further proceedings, if necessary, to what extent, if any, disability and the financial consequences within the act were caused by the injury.

WOLFE, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice McDONOUGH.