424 P.2d 138

**MORRISON–KNUDSEN CONSTRUCTION COMPANY and Employers Mutual of Wausau, Plaintiffs,**

v.

**INDUSTRIAL COMMISSION of Utah and Joseph Higginson, Defendants.**

**No. 10659.**

Supreme Court of Utah.

Feb. 24, 1967.

Clyde, Mecham & Pratt, Frank J. Allen, John T. Evans, Salt Lake City, for plaintiffs.

Phil L. Hansen, Atty. Gen., A. Wally Sandack, Salt Lake City, for defendants.

ELLETT, Justice:

The defendant Joseph Higginson was injured while working for plaintiff Morrison-Knudsen Construction Company. The Industrial Commission of Utah ordered compensation to be paid by Morrison-Knudsen's insurance carrier, Employers Mutual of Wausau, on the basis of fifty per cent disability of the injured employee based on the report of the medical advisory board. The plaintiffs did not object to the award.

The employee requested that the matter be referred to a medical panel for a report to the Industrial Commission pursuant to the provisions of Section 35-1-77, U.C.A.1953 as amended. This was done, and the panel estimated a permanent partial disability of seventy per cent. Mr. Higginson objected to the panel report and asked for a hearing, which was had. One member of the medical panel testified that the disability was seventy per cent. The doctor who had treated Mr. Higginson testified that he "might be closer to eighty-five or ninety per cent physiologically and anatomically disabled."

The Commission made a temporary order of permanent total disability but reserved to either party the right to a formal hearing. It referred Mr. Higginson to the Division of Vocational Rehabilitation under the Board of Education of the State of Utah pursuant to Section 35-1-67, U.C.A.1953 as amended.

Counsel for Mr. Higginson requested a formal hearing for the purpose of having a final order of permanent total disability entered. The hearing was had, and the same two doctors testified who had given their testimony at the prior hearing. The panel doctor again said that in his opinion Mr. Higginson had seventy per cent partial permanent disability, while the other doctor said the disability was total and permanent. The counsellor of the Division of Vocational Rehabilitation testified that due to the low I. Q. of Mr. Higginson, it was his opinion that there could be no rehabilitation and that their files had been closed on the case.

A final order was entered by the Industrial Commission finding total permanent disability.

The employer and its insurance carrier now ask this court to review the proceedings and to order the Industrial Commission to find according to the recommendations of the medical panel, to-wit, that Mr. Higginson has a permanent partial disability of seventy per cent.

■ This court has held on numerous occasions that the Industrial Commission is the sole judge of the facts where there is competent evidence to sustain the finding (Kent v. Industrial Commission, 89 Utah' 381, 57 P.2d 724), and the fact that this court might have made other findings does not make any difference. (See also Tintic Standard Mining Company v. Industrial Commission, 100 Utah 96, 110 P.2d 367.)

■ This court further held in Kelly v. Industrial Commission, 80 Utah 73, at page 76, 12 P.2d 1112, at page 1113, that the Commission was not bound to believe medical experts, and stated:

The question of whether the employee was totally and permanently disabled was the ultimate matter to be decided by the commission, upon all the evidence in the case. Upon this direct question expert witnesses may not properly express opin-

ions. Utah Copper Co. v. Ind. Com., 69 Utah 452, 256 P. 397. Also see Annotation, 78 A.L.R. 755. At least the commission is not bound by such opinion evidence. 22 C.J. 728. In view of all the evidence, and the further consideration that the members of the commission, at the numerous hearings, had personal contact with, and opportunities for observing the conduct of, the employee, it cannot be said that a finding of total and permanent disability was compulsory as a matter of law. Besides, there was sufficient contrary evidence in the case to raise a conflict upon the ultimate issue, which prevents this court from disturbing the findings made.

The plaintiffs objected to the taking of evidence by the Commission relating to the I. Q. of the injured employee for the purpose of determining the amount of disability. The law of this state regarding whether a person is totally disabled is well set out in the case of United Park City Mines Company v. Prescott et al., 15 Utah 2d 410, 393 P.2d 800:

In considering the attack upon the order made these principles are to be kept in mind: that a workman may be found totally disabled if by reason of the disability resulting from his injury he cannot perform work of the general character he was performing when injured, or any other work which a man of his capabilities may be able to do or to learn to do;

that it is the prerogative of the Commission to find the facts and to determine the degree of disability; that we should review the evidence in the light most favorable to the findings; and if when so reviewed, there is a reasonable basis therein to support them, the findings and order should not be disturbed.

It was further argued in that case that the Commission improperly combined the defendant's injury with his advanced age, limited education, and other abilities to rate him as totally disabled. This court affirmed the Industrial Commission's finding; and if the age of an injured employee can be considered in determining his ability to be rehabilitated, it would seem that his intelligence quotient could equally be a factor for consideration, and we so hold.

This court also has held that the ability of an injured employee to perform any work was a factor affecting his totality of disability. (American Mud & Chemical Company et al. v. Industrial Commission of Utah et al., 16 Utah 2d 246, 398 P.2d 889.) Certainly one with a low intelligence quotient cannot be expected to learn a new trade or calling and thereafter be able to sell his services in the open labor market as readily as a more gifted person might do.

Complaint is also made because the written report of the Department of Vocational Rehabilitation was considered in determining total disability. We find noth-

ing wrong with this. Proceedings before the Industrial Commission need not be as formal and technical as are those in courts. (See Section 35–1–33, Utah Code Annotated 1953.)

In the case of United Park City Mines Company v. Prescott above referred to, a situation similar to the instant matter was before the court. The medical advisory board recommended ninety per cent loss of bodily function to the Commission, and the Division of Vocational Rehabilitation made its report that Mr. Prescott was not a feasible candidate for vocational rehabilitation. This court affirmed the holding of the Industrial Commission that Mr. Prescott was totally disabled.

■ It seems clear to us that in holding Mr. Higginson totally and permanently disabled the Industrial Commission was neither arbitrary nor capricious but that it made its finding based on credible evidence before it.

The finding and award made by the Industrial Commission are affirmed, and the defendant Higginson is awarded his costs.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring and dissenting):

I concur, except for that part of the main opinion having to do with intelligence quotient.

The main opinion cites United Park City Mines Co. v. Prescott for the proposition that compensability might be founded on "advanced age, *limited education*, and other abilities to rate him as totally disabled." The United Park City Mines did not say that. It said "or any other work which a man of his capabilities may be able to do or to *learn to do*." There is a difference that does not justify the gratuity of the main opinion to the effect that "if the age of an injured employee can be considered in determining his ability to be rehabilitated, it would seem that his intelligence quotient could equally be a factor for consideration, and we so hold." I cannot concur in the preceding observation.

A man's age *physically* creeps up on him. As I understand it, his intelligence quotient *doesn't*, but lies there during mortality without aggrandizement. In this I may be wrong, not knowing much about psychiatry, being psychophobic at heart. But I always have thought that workmen's compensation laws were designed to alleviate familial or other hardship because of unemployment *due to physical impairment*. I may be wrong,—and the instant main opinion would seem to conclude I am wrong when it says the I. Q. of a person is a factor in determining total permanent disability.

If the main opinion is correct, the horn of plenty blows much louder, and Pandora's Box becomes a box car, not a shoe box. Thousands of employers have responded to the nationally subsidized plea to give those who, because of mental difficulties, are unable to cope with the average worker,—but who may do things of a menial nature satisfactorily. If a low I. Q. is to be added to advanced age as a factor in determining total permanent disability, my guess is that employers will discontinue using a lot of unfortunates who need help,—if the employers are faced with lifetime support of one with a low I. Q. if the latter loses a hand in industry and can do nothing therein because of the loss of the hand *plus* a low I. Q. Any other conclusion seems to me as one leading to shriveled help for needy persons and an unrealistic application of the letter, purpose and spirit of industrial compensation legislation.

To me, the theme song of the main opinion with respect to the I. Q. factor is discordant with the compensation song. The *physical* handicap of one losing a hand may amount to 10%. Now, if you add to that figure 90% because of a low I. Q. to conclude 100% total, permanent disability,—the result is obvious: The labor market for poor unfortunates with low I. Q.'s will tend to dry up,—and employers will take a second look at the so-called I. Q. factor.