Sam Joe **KERANS**, Plaintiff
and Appellant,

v.

The **INDUSTRIAL COMMISSION of the
STATE OF UTAH, Meadow Gold Dair-
ies (Employer—self-insured), and the
Second Injury Fund of the State of
Utah, Defendants, Respondents, and
Cross-Appellant.**

No. 19786.

Supreme Court of Utah.

Jan. 3, 1986.

Donald R. Jensen, Orem, for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Shaun Howell, Asst. Atty. Gen., Gilbert A. Martinez, Michael F. Heyrend, D. Randall Trueblood, Salt Lake City, for defendants, respondents, and cross-appellant.

HALL, Chief Justice:

In this case, plaintiff Sam Joe Kerans seeks recovery from his former employer, defendant Meadow Gold Dairies (hereinafter defendant), and the Second Injury Fund for injuries allegedly sustained by plaintiff while in defendant's employ. The Industrial Commission affirmed an order of the administrative law judge dismissing plaintiff's claim for compensation due to an alleged back injury, awarding plaintiff compensation for an injury to his neck, and denying plaintiff recovery from the Second Injury Fund. Plaintiff appeals from the Commission's decision, contending: (1) that the evidence does not support the finding that plaintiff's back condition was not the result of his alleged back injury; (2) that his first claim (back injury) was not barred by the statute of limitations; (3) that the

award of compensation for the neck injury (second claim) should have been based on the 10% "whole-man" disability rating rather than the reduced 5% "partial-man" rating; (4) that the Second Injury Fund is liable; and (5) that the Commission should have entered a finding of permanent total disability.

Defendant cross-appeals the denial of its motion for an offset to the compensation awarded to plaintiff for his neck injury. Defendant sought by this means to recover medical expenses it paid on the claimed industrial injury to the lower back that later proved to be nonindustrial and time-barred.

On March 17, 1982, plaintiff filed two applications for hearing with the Industrial Commission, alleging he had sustained two industrial injuries as a result of two separate incidents during his three-year employment by defendant as a truck driver and milk delivery man.

Plaintiff's first industrial injury occurred on October 28, 1978, when he slipped on some ice inside his delivery truck and fell on a metal milk carton basket injuring his back. Plaintiff was x-rayed and examined by a physician that same day. The physician's report indicated that no signs of a fracture or other serious injury were detected.

Plaintiff's medical history reveals that prior and subsequent to the first industrial accident, plaintiff had experienced serious heart, vascular and back disorders. In 1977, approximately a year before the first accident, plaintiff suffered a major heart attack. In 1979 and again in 1980, he underwent vascular surgery to correct a disorder known as aggravated arteriosclerosis and bilateral lower extremity claudation. Additionally, in August of 1979, plaintiff was diagnosed as having degenerative lumbar disc disease.

Plaintiff's second industrial injury occurred on April 28, 1981, when he twisted and sprained his neck while unloading frozen foods from his delivery truck. He did not seek medical attention at that time.

On November 16, 1981 (approximately seven months after the second accident), plaintiff left work and was admitted to the hospital. Dr. Mark Fullmer examined plaintiff for arterial pain in his left chest and left arm. Dr. Fullmer had performed the above-mentioned vascular surgeries on plaintiff in 1979 and 1980. Plaintiff's medical history and physical examination report dated November 16, 1981, confirms the prior diagnosis of aggravated arteriosclerosis and adds that plaintiff had a documented history of degenerative disc disease, mainly in the lumbar region. The report did not mention any serious injuries as possible causes of plaintiff's back condition.

Dr. Fullmer consulted with an orthopedic surgeon, who performed an examination of plaintiff and diagnosed osteoarthritic spurring in the dorsal and lumbar spine. Surgery was performed on plaintiff's lumbar spine on March 1, 1982.

Plaintiff subsequently received treatment for the 1981 neck injury and, on May 5, 1982, underwent cervical surgery. Plaintiff's physicians acknowledged positive recovery from the cervical surgery as well as from the earlier back surgery.

A hearing on plaintiff's claims was held before an administrative law judge on September 28, 1982. At that time, the medical aspects of the case were referred to a medical panel. The panel examined plaintiff and submitted a report to the judge. Based on that report and the evidence presented at the hearing, the judge entered an order on July 29, 1983, disposing of plaintiff's claims as follows. The first claim, relating to the October 28, 1978, back injury, was dismissed on two grounds: (1) it was not filed within the three-year period prescribed by the statute of limitations; and (2) plaintiff's lower back condition was not causally related to the 1978 incident, but was the result of a preexisting degenerative disc disease. The second claim, relating to the April 28, 1981, neck injury, was determined to be compensable. Plaintiff was thus awarded $11,960 for temporary total disability from November 17, 1981, to November 17, 1982, $2,386.80

for permanent physical impairment of 5%, all medical expenses incurred as a result of the neck injury, and attorney fees of $2,870. The order further stated that inasmuch as plaintiff's neck injury did not result in permanent incapacity that was substantially greater (5% disability of the partial man) than he would have incurred if he had not had the preexisting incapacities, plaintiff was not entitled to compensation from the Second Injury Fund.

On August 13 and 15, 1983, motions for review were filed with the Industrial Commission by plaintiff and defendant, respectively. In response, the administrative law judge entered a supplemental order in which he clarified the limitations on defendant's liability. The judge ruled that defendant was not entitled to recover for medical payments of $7,669.75 already made in association with the back surgery, by offsetting that amount from the compensation award for the neck injury.

The administrative law judge's order and supplemental order were subsequently affirmed by the Industrial Commission.

I.

Plaintiff contends that the evidence does not support the Commission's finding that his back condition was the result of a preexisting degenerative lumbar disc disease rather than the alleged 1978 industrial injury. Plaintiff claims that the evidence shows the problems he experienced with his back began at the time the injury occurred and that the only possible inference or conclusion to be drawn from such evidence is that the back problems were causally related to the injury.

This Court's stringent standard of review in Industrial Commission cases was recently reiterated in *Ogden Standard Examiner v. Industrial Commission:* [1] "[Our inquiry is] whether the Commission's findings are 'arbitrary and capricious,' or 'wholly without cause' or contrary to the 'one [inevitable] conclusion from the evidence' or without 'any substantial evidence' to sup-

port them. Only then should the Commission's findings be displaced."

■ The record contains ample evidence to support the findings and conclusions of the Commission regarding the lack of a causal relationship between plaintiff's back condition and his alleged 1978 industrial injury. This evidence includes: a statement by plaintiff's own doctor, Dr. Fullmer, in his medical report (November 16, 1981) to the effect that plaintiff had a documented history of degenerative disc disease; a similar finding by the medical panel in its report to the administrative law judge; and the opinion of Dr. John Berman, who performed an independent examination upon plaintiff on behalf of defendant, that the lumbar spine problem involved "definite pre-existing degenerative changes ... prior to the injury."

II.

As previously pointed out, the administrative law judge dismissed plaintiff's claim relative to the 1978 injury on two separate grounds, the first being that the medical evidence did not establish a causal connection between the injury and plaintiff's back condition, and the second being that the claim was barred by the statute of limitations. In its review of that decision, the Industrial Commission determined that the claim was properly dismissed on the medical evidence ground alone and that it was therefore unnecessary to address the statute of limitations question.

Plaintiff acknowledges that the statute of limitations issue is moot if this Court affirms the dismissal on the medical evidence ground. Having determined that the medical evidence adequately supports the Commission's decision, we do not reach the statute of limitations issue.

III.

■ After examining plaintiff and reviewing the extensive medical records con-

---

1. Utah, 663 P.2d 88 (1983) (*quoting Sabo's Elec. Serv. v. Sabo,* Utah, 642 P.2d 722, 725 (1982)).

See also U.C.A., 1953, § 35–1–85; *Savage v. Industrial Comm'n,* Utah, 565 P.2d 782 (1977).

cerning his preexisting medical problems and his alleged industrial injuries, the medical panel determined the scope of plaintiff's disability and the degree of impairment attributable to each of the various medical problems. The panel then reported its findings to the administrative law judge, who adopted the findings and incorporated them into his own findings of fact as follows:

> The applicant is assigned ratings for various permanent physical impairments as follows: 1) respiratory impairment—25% of the whole body, 2) organic heart disease—15% impairment of the whole body, 3) lumbar spine disease and fusion—25% and 4) cervical spine injury—10% of body function. Utilizing the Combined Values Chart, all of the foregoing impairments combine to 57% of the whole man with 52% being attributable to preexisting conditions including the 1978 injury, and 5% being attributable to the April 28, 1981 accident.

The judge then concluded, on the basis of these findings:

> The applicant is entitled to workmen's compensation benefits as a result of his industrial accident of April 28, 1981.... Even though the accident was given a rating of 10% loss of the whole man, the increase in impairment is limited to 5% under the rationale set down in the recent [Utah] Supreme Court case of *Jacobsen Construction v. Hair,* [2]....

In the *Hair* case relied upon by the judge, a medical panel assessed the claimant's "whole-man" impairments as follows: (1) preexisting congenital absence of fingers—25%, (2) preexisting back problem—10%, (3) industrial injury—50%. The panel then concluded that these impairments combined to equal a total physical impairment of 67%. Liability was then apportioned between the employer and the Second Injury Fund, 50/67 (industrial injury impairment over total impairment) or 75% to the former and 17/67 (combined preex-

isting impairment over total impairment) or 25% to the latter.[3]

On appeal, the employer contested the propriety of the Commission's assessment of liability. The basis for the employer's contention was that the Commission had erroneously combined "whole-man" figures (i.e., 25%, 10% and 50%) with a "partial-man" figure (i.e., 67%). The employer argued that the two types of impairment ratings were entirely different in that whole-man ratings are representative of the percentage of disability to the previously *unimpaired* man, while partial-man ratings represent the percentage of disability to the previously *impaired* man and are therefore incompatible for purposes of calculating disability. The employer further contended that only partial-man ratings should be utilized in calculating the proportionate liability of an employer or its insurer and the Second Injury Fund. Thus, the employer urged this Court to direct the Commission to recalculate liability by reducing the whole-man figures to their partial-man equivalents and combining them with the total, partial-man impairment rating.[4]

This Court, being persuaded by the employer's argument, held and reasoned as follows:

> The Commission erred by mixing whole-man impairment ratings with the 67 percent combined partial-man impairment rating.... According to § 35–1–69(1), the panel must first determine "the total permanent physical impairment resulting from all causes and conditions," which it did in computing the 67 percent combined partial-man impairment. However, in supplying "the percentage of permanent physical impairment attributable to the industrial injury," under step two, the panel used the 50 percent whole-man figure, and failed to give the equivalent 34 percent partial-man figure. And in supplying "the percentage of permanent physical impairment attributable to

---

**2.** Utah, 667 P.2d 25 (1983).

**3.** *Id.* at 26.

**4.** *Id.*

the previously existing ... conditions," under step three, the panel used the 25 and 10 percent whole-man ratings, and failed to provide the equivalent 25 and 8 percent partial-man figures (for a combined pre-existing impairment rating of 33 percent). . . .

The correct assessment to the employer should have been ³⁴⁄₆₇ths (51 percent), comparing one partial-man rating to another, because the industrial injury impairment rating used to arrive at the 67 percent total was the 34 percent partial-man rating, not the 50 percent whole-man rating. . . . This result is consistent with the policy of broadening the base of responsibility for pre-existing conditions, . . . and with the rule that the employer be liable for only that portion of compensation attributable to the industrial injury alone. . . .[5]

In the instant case, plaintiff contends that the Commission erred in its application of the Court's holding in *Hair*. Plaintiff argues that he is entitled to an award of compensation from his employer based upon the percentage of impairment to the whole man, i.e., 10%. We agree.

*Hair* is distinguishable on its facts. In *Hair*, the Court addressed only the narrow question of apportionment of compensation between the employer and the Second Injury Fund, and its decision went only to that point:

> On appeal to this Court, neither the employer and its insurer nor the Second Injury Fund challenges Hair's entitlement to compensation, the total amount of compensation due, or the requirement that the compensation liability be apportioned between them. The only issue is the proper ratio of apportionment, i.e., the amount of compensation for which each party is liable.[6]

The Court concluded that the Commission erred by *mixing* whole-man impairment ratings with combined partial-man impairment ratings. The Court did not address the issue of the *amount* of compensation due, except to observe that it had previously interpreted U.C.A., 1953, § 35–1–69(1) to mean that the employer's proportion of liability for compensation is equal to the percentage of total impairment attributable to the industrial injury. Consistent therewith, we find no justification in restricting compensation to partial-man ratings. We therefore hold that plaintiff is entitled to compensation on the basis of the whole-man impairment ratings.

## IV.

■ The administrative law judge found that plaintiff was not entitled to payments from the Second Injury Fund because his 10% whole-man disability resulting from the accident of April 28, 1981, did not result in substantially greater incapacity than he would have incurred if he had not had the previously existing incapacities. Plaintiff acknowledges that this finding comports with the Court's recent statement in *Day's Market, Inc. v. Muir*[7] that before the Second Injury Fund could be found liable, the current incapacity must be substantially greater than the employee would have incurred if he had not had the preexisting incapacity. Plaintiff however contends that the Court's statement is a misinterpretation of U.C.A., 1953, § 35–1–69. He maintains that the statute should be interpreted as providing compensation out of the Second Injury Fund when the incapacity resulting from *all causes*, rather than just from the current injury, is "substantially greater." Plaintiff points out that his impairment from all causes (i.e., 57% utilizing the Combined Values Chart) is substantially greater than it would have been if he had not had the preexisting whole-man impairment (i.e., 52%), and thus, under his interpretation of the statute, he is entitled to compensation from the Second Injury Fund.

The recent decisions of this Court in *Kaiser Steel Corp. v. Industrial Commis-*

5. *Id.* at 28 (citations omitted).

6. *Id.* at 26.

7. Utah, 669 P.2d 440 (1983).

*sion,*[8] *Second Injury Fund v. Streator Chevrolet,*[9] and *Veyo Concrete Products, Inc. v. Industrial Commission*[10] have resolved this issue of statutory construction in favor of plaintiff, and the Commission's order to the contrary is vacated and set aside.

### V.

Plaintiff's final arguement is that the Commission erred in refusing to enter a finding of "permanent total disability" pursuant to U.C.A., 1953, § 35–1–67. The rationale given by the judge for his decision in this regard was that the 1981 injury resulted in only a small increase in impairment over what plaintiff had at the time he sustained the injury. The injury in no way aggravated any of the preexisting impairments, and it did not appear in and of itself to be particularly disabling. Plaintiff disputes this rationale, arguing that the 1981 injury had a substantial impact on the preexisting disabilities.

■ The question of whether plaintiff was totally and permanently disabled was one of fact to be decided by the Commission, upon all of the evidence in the case.[11] In light of our stringent standard of review of such questions, and in recognition of the facts and the evidence cited as the basis for the Commission's finding, we decline to disturb that finding. However, our recently decided cases of *Kaiser Steel, Streator,* and *Veyo* bear upon this issue to the extent that they stand for the proposition that the degree of increased incapacity statutorily required by the words "substantially greater" is satisfied if the contribution of the preexisting impairment to the total combined impairments is definite and measurable. It is enough if the two impairments cumulatively resulted in a greater degree of disability. Consequently, on remand,

the Commission should reconsider the issue of permanent total disability.

### VI.

■ Defendant's single point on cross-appeal is that in light of the Commission's finding that plaintiff's 1978 back injury was not compensable, defendant should be reimbursed for the $7,669.75 it previously paid toward medical expenses incurred in the treatment of plaintiff's back condition. Defendant suggests that the reimbursement be accomplished by offsetting plaintiff's award for the 1981 neck injury by the amount paid for the back injury expenses.

Defendant advanced the same argument to the administrative law judge. The administrative law judge rejected this proposal, reasoning as follows:

The medical expenses were paid by the defendants in good faith based upon their own investigation of the facts and review of medical records pertaining to the October 28, 1978 injury, and they should not be entitled to an offset for permanent partial impairment awarded on an entirely different injury that occurred some three years later.

Defendant cites no statutory authority in support of its contention of entitlement to reimbursement. Instead, defendant relies upon common law principles of restitution based upon the doctrine of unjust enrichment.[12]

U.C.A., 1953, § 35–1–45[13] provides for the payment of compensation and medical expenses as follows:

Every employee mentioned in section 35–1–43 who is injured, and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, wheresoever such injury occurred, provided the same was not purposely self-inflicted, shall be entitled to

**8.** 709 P.2d 1168 (1985).

**9.** 709 P.2d 1176 (1985).

**10.** 710 P.2d 172 (1985).

**11.** *See Kelly v. Industrial Comm'n,* 80 Utah 73, 76, 12 P.2d 1112, 1113 (1932).

**12.** *Citing Rapp v. Salt Lake City,* Utah, 527 P.2d 651 (1974); *Baugh v. Darley,* 112 Utah 1, 184 P.2d 335 (1947).

**13.** As it read at the time this action took place.

receive, and shall be paid, such compensation for loss sustained on account of such injury or death, and such amount for medical, nurse and hospital services and medicines, and, in case of death, such amount of funeral expenses, as herein provided.

The foregoing section makes no provision for the recovery of medical expenses paid under mistake of fact. All of the remaining sections of the worker's Compensation Law are also silent on the subject.[14]

The issue presented has not previously been addressed by this Court. However, a number of other jurisdictions have resolved the issue in favor of the claimant.

In the recent case of *Matter of Johner*,[15] the Supreme Court of Wyoming followed the earlier decisions of the courts of Kansas,[16] Washington,[17] Maine,[18] Michigan,[19] and Oregon.[20] Those courts concluded that because worker's compensation statutes provide the exclusive remedy for work-related injuries, in the absence of a statutory provision for the recovery of funds paid to an employee because of a mistake of fact, it did not lie within the prerogative of the court to fashion any common law exception to the statutes. This is a sound premise which we adopt.

Following well-recognized rules of statutory construction, we construe the subject statute liberally and reasonably in favor of the payment of benefits and decline to read into the statute a provision not apparently intended by its enactment.

Affirmed in part and reversed in part. The case is remanded for entry of an order consistent with this opinion.

STEWART, HOWE and DURHAM, JJ., and DEAN E. CONDER, District Judge, concur.

14. U.C.A., 1953, §§ 35–1–1 to –107.

15. Wyo., 643 P.2d 932 (1982).

16. *Tompkins v. George Rinner Constr. Co.*, 196 Kan. 244, 409 P.2d 1001 (1966).

17. *State v. Olson*, 172 Wash. 424, 20 P.2d 850 (1933). *See also Deal v. Department of Labor & Indus.*, 78 Wash.2d 537, 477 P.2d 175 (1970).

ZIMMERMAN, J., having disqualified himself, does not participate herein; CONDER, District Judge, sat.

18. *American Mut. Ins. Cos. v. Murray*, Me., 420 A.2d 251 (1980).

19. *Stewart v. Saginaw Osteopathic Hosp.*, 100 Mich.App. 502, 298 N.W.2d 911 (1980).

20. *Williams v. State Accident Ins. Fund*, 31 Or. App. 1301, 572 P.2d 658 (1977).