# CHANDLER v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3795.    Decided June 20, 1922.    Rehearing denied July 11, 1922.
(208 Pac. 499.)

1. MASTER AND SERVANT—INJURY RECEIVED WHILE GOING TO WORK HELD COMPENSABLE AS "ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT." Where an employé, a deliveryman, who was on his way from his residence to employer's garage during working hours to get the delivery car which he used, was bit by a dog and died from hydrophobia, the injury arose out of the employment and was compensable, as the employé was actually on an errand for his employer and not merely going to work.

2. MASTER AND SERVANT—REFUSAL TO TAKE PASTEUR TREATMENT HELD NOT WILLFUL NEGLECT DEFEATING RECOVERY UNDER COMPENSATION ACT, FOR DEATH BY HYDROPHOBIA. Where an employé, bitten by a dog, refused to take the Pasteur treatment after he was told that an examination showed that the dog had rabies, on the ground that he did not believe it, could not afford the expense and was afraid of the treatment, he was not guilty of willful neglect defeating recovery under the Compensation Act, for death resulting from hydrophobia.

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

Action by Emma Chandler against the Industrial Commission of Utah and others, after a refusal of the Industrial Commission to grant plaintiff an award under the Workmen's Compensation Act. From a verdict directed for plaintiff, defendants appeal.

AFFIRMED.

*De Vine, Howell, Stine & Gwilliam,* of Ogden, and *E. L. Kearney,* of Salt Lake City, for appellants.

*Chez & Douglas,* of Ogden, for respondent.

WEBER, J.

On June 29, 1918, Mrs. Emma Chandler, the widow of George C. Chandler, deceased, filed with the Industrial Commission of Utah an application for compensation on account of the death of her husband, while an employé of A. M. Miller, one of the defendants. Compensation was denied by the Commission. Pursuant to the provisions of the Employers' Liability Act (Comp. Laws 1917, §§ 3061-3165), at that time in force, she commenced an action in the district court of Weber county. A demurrer to the complaint having been sustained, she appealed to this court, which reversed the judgment of the district court. *Chandler* v. *Industrial Commission,* 55 Utah, 213, 184 Pac. 1020, 8 A. L. R. 930. Thereafter the cause was tried in the district court before a jury, and, after all the evidence had been introduced and both sides had rested, the trial court peremptorily instructed the jury to return a verdict in favor of the plaintiff and against defendants for the amount of compensation allowed by law. From that judgment, defendants prosecute this appeal.

George Chandler, the deceased, was a deliveryman, employed by the defendant A. M. Miller. On January 2, 1918, he left his home to go to his employer's garage. On the way he was attacked by a dog, and his hand was bitten and lacerated. He regarded the injury of minor importance and returned to his work. In about two months he was taken violently ill, and died from hydrophobia as the result of the dog's bite.

It was claimed at the trial that he had brought home a package the evening before and that he intended to deliver the package to a customer on his way to the garage. The testimony adduced in support of this claim was meager and un-

satisfactory, vague and uncertain, and we disregard it entirely.

It is, however, undisputed that the duties of deceased required him to make deliveries of meats and groceries daily; that his regular hours of employment were from 7 a. m. to 6 p. m.; that, at the time he was bitten by the dog, it was after 7 a. m., and that he was going by the most direct route to his employer's garage, where the delivery cars were kept. This garage was in the rear of his employer's residence, several blocks from the place of business of his employer. Chandler's purpose in going to the garage was to get the delivery car which he used, and to see to it that the other deliverymen had gas, oil, and water in their cars.

Two questions are raised by the exception taken by defendants to the court's instruction to the jury directing a verdict in favor of plaintiff, the first of which is whether the injuries resulting in the death of Chandler arose out of and in the course of his employment. If instead of going directly to the garage, Chandler had gone to his employer's place of business, and, upon his arrival there, had been ordered to go to the garage for the purpose of obtaining his delivery car and for the purpose of supervising the preparation of the other cars for their drivers, the case would clearly come within one of the well-recognized exceptions to the general rule that an employé injured while on his way to work and before he has reached his place of work does not come under the protection of the Compensation Act. He took the direct route to the garage during working hours, and, at the very time he was bitten by the dog, he was engaged in the furtherance of his employer's business and not on an errand of his own. He was obeying the order of his employer, the order to proceed to the garage for the purpose of attending to his duties there. He was under the control and direction of his employer from the moment he left home to go to the garage for the automobile, and was at that time in the course of, and within the scope of, his employment. His death resulting from the accident is therefore compensable.

While it is true, as said in *Ocean Acc. & G. Co.* v. *Ins. Acc. Com.*, 173 Cal. 313, 159 Pac. 1041, L. R. A. 1917B, 336, "in the very broadest sense, * * * an injury which happens to a man who is on his way to his place of employment is an injury 'growing out of and incidental to his employment,' since a necessary part of the employment is that the employé shall go to and return from his place of labor," we do not base our conclusion upon that ground, but on the ground that, under the facts of this particular case, Chandler's going to the garage was a distinct part of a definite duty—more than merely going to work, and actually an errand for his employer at the time of the accident.

The other question involved is "whether, upon all the evidence in the case, the refusal of the deceased, George Chandler, to take the Pasteur treatment was so unreasonable under the circumstances as to prevent the plaintiff, as a matter of law, from making any recovery in the case, and if his conduct in refusing to take Pasteur treatment under all the circumstances in the case, was not so unreasonable, as a matter of law, as to prevent the plaintiff from making a recovery, whether this question should have been submitted to the jury."

Dr. Baker, Chandler's physician, testified that, when he treated the wound, he discussed with Chandler the Pasteur treatment, and told him that the Pasteur treatment was the safest thing to take if there was any question about the dog being rabid, and that, when administered in time, it was usually successful. The same advice was given him by Mr. Shorten, inspector of the health department of Ogden, who had made arrangements for procuring the serum without expense to Mr. Chandler. Mr. Shorten took the head of the dog to Salt Lake City, where it was examined by a physician connected with the state board of health, who declared the dog to be infected with rabies. Before going to Salt Lake City, he took the head of the dog to Chandler and asked him whether that was the dog that bit him. Chandler replied: "I believe it is. It was the same breed of dog." Mr. Shorten then made arrangements to have the treatment administered

by Mr. Chandler's physician at Ogden, and when he so advised Chandler the latter replied that he did not think there was any danger and that he did not think the dog had the rabies, that he could not afford the expense, and that he was afraid of the treatment,. Physicians testified that the Pasteur treatment, when administered in time, is a preventative of hydrophobia.

The evidence does not show willful, unreasonable, and negligent conduct on the part of Chandler. He may have erred in his judgment. He was evidently mistaken in his belief that the dog which bit him did not have hydrophobia. No evidence was produced from which could be inferred such willful neglect as should deprive his widow and children of compensation. Nor was there any evidence that would have justified the court in submitting that issue to the jury. *Pinyon Queen M. Co.* v. *Ind. Com.*, 59 Utah, 402, 204 Pac. 323.

We think the judgment should be affirmed, with costs to respondent. It is so ordered.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.