WILSON et al. v. INDUSTRIAL COMMISSION et al.

No. 7191.   Decided July 1, 1949.   (207 P. 2d 1116.)

See 71 C. J., Workmen's Compensation Acts, sec. 443.

*Arthur E. Morteton,* Salt Lake City, *Elias L. Day,* Salt Lake City, for plaintiffs.

*Grover A. Giles,* Attorney General, *Callister, Callister & Lewis,* Salt Lake City, *C. N. Ottosen,* Salt Lake City, for defendants.

LATIMER, Justice.

This is a writ of review from an order of the Industrial Commission granting an award to Roberta and Beverly Barney as dependents of Frank Barney, deceased. It is admitted that Earl W. Wilson was an employer within the meaning of the Workmen's Compensation Act, U. C. A. 1943, 42-1-1 et seq.; that Hartford Accident & Indemnity

Company was his insurance carrier; that decedent Frank Barney was one of Wilson's employees; and that Roberta and Beverly Barney, as surviving widow and minor daughter of decedent Frank Barney, were his dependents.

Plaintiff Wilson was engaged in the used car and automotive repair business and operated business establishments in Salt Lake City, Magna and Ogden, Utah, as well as a shop in Phoenix, Arizona. Decedent had been intermittently employed by Wilson for some two or three years preceding his death and just prior to his death he had been placed on Wilson's regular pay roll as a mechanic and foreman. During the three or four days preceding his death, his duties had been to "get the Magna shop going," and the evidence indicates the locale of Wilson's work was not to be changed until the car, later referred to, was repaired and returned to Salt Lake City. The day before the accident occurred, Wilson had removed an automobile from his Ogden shop to his recently opened Magna shop for repair. That evening Wilson instructed decedent to go out to Magna the next morning and bring this same automobile back to Salt Lake City by noon or as near thereto as possible, but to complete all repairs before bringing it back. Wilson testified that he did not know that night whether the automobile had been repaired and made ready to return, but that before bringing it to Salt Lake City decedent was expected to make such repairs as were found to be necessary. The method of returning the automobile was left entirely up to decedent.

The next morning, January 9, 1947, decedent sustained fatal injuries while riding as a passenger in the automobile of one Reed A. Foote, a mechanic hired by Wilson to assist decedent. At the time of the accident, Foote and decedent were traveling from Salt Lake City to Wilson's Magna shop. They had left their homes at about 8:00 o'clock that morning and the accident occurred approximately fifteen minutes thereafter. Wilson testified that although the decedent was ordinarily expected to commence his day's work

at 8:00 a. m. each morning he had no regular hours and could adjust his time to the work that had to be done; and that although the decedent and Foote had furnished their own transportation during the three or four days they had been operating Wilson's Magna shop, they could have used one of Wilson's automobiles had they requested so to do.

The only issue before this court is whether decedent's fatal injuries were sustained in an accident arising out of, or in the course of, his employment. The parties are in substantial agreement concerning the principles of law involved, but divide upon the conclusion to be reached under the facts of the case. The rule in this jurisdiction and in the United States generally is that an injury sustained by an employee while going to or returning from work is not an injury arising out of or in the course of his employment. Admitting the general rule, defendants rely upon one of its recognized exceptions, namely, that an injury sustained by an employee, either on his employer's or his own time, arises out of his employment if the employee is injured while upon a mission for the employer.

The principle involved in this case has been before this court on several occasions and there are three cases which throw some light on the rule to be followed. The first of these is *Chandler* v. *Industrial Commission,* 60 Utah 387, 208 P. 499, 500. In that case the employer's delivery truck was kept in a garage behind his home. Chandler, who was employed as a deliveryman, was bitten by a mad dog while proceeding on a direct route from his home to his employer's garage to get a truck in order to commence his day's activities. The holding of the court in that case is indicated by the following:

"While it is true, as said in *Ocean Accident & Guarantee Co.* v. *Industrial Accident Commission,* 173 Cal. 313, 159 P. 1041, L. R. A. 1917B, 336, 'in the very broadest sense, * * * an injury which happens to a man who is on his way to his place of employment is an injury "growing out of and incidental to his employment," since a necessary part of the employment is that the employe shall go to and return from his place of labor,' we do not base our conclusion

upon that ground, but on the ground that, under the facts of this particular case, Chandler's going to the garage was a distinct part of a definite duty—more than merely going to work, and actually an errand for his employer at the time of the accident."

Either the holding in *Chandler* v. *Industrial Commission* case has been modified by or the facts differentiate it from later cases. In that case the court found that the employee-employer relationship commenced when the employee left his home to proceed to the garage. His time of employment commenced at 7:00 o'clock in the morning and the court found he was injured during working hours. Occasionally he took merchandise home with him and made delivery the following morning. By a course of conduct the parties created an employer-employee relationship which encompassed travel from Chandler's home to the garage. Under those facts and circumstances, this court held he was subject to control and supervision of the employer from the time he left his home and, accordingly, was in the course of his employment at the time of his injury.

In *Kahn Brothers* v. *Industrial Commission*, 75 Utah 145, 283 P. 1054, the employee Doe customarily attended to certain of his employer's uptown business while traveling between his home and place of work during his lunch period. On the day of the accident Doe had visited the bank to make his employer's deposit, had eaten his lunch at home and then upon leaving home was proceeding by the most direct route to the post office for the purpose of collecting his employer's mail when he was struck by an automobile. The errands Doe performed were part of his duties required under the terms of his employment and were performed pursuant to the employer's direction. This court held that Doe's injury arose out of and in the course of his employment. The errands he was required to perform during his lunch hour maintained the employer-employee relationship as the employee was doing more than merely returning to his employer's place of business. He was, in addition, performing one of the duties of his employment. The special

mission rule retains the relationship between the parties and that rule required a holding in that case that the employee was in the course of his employment at the time of his injury.

The facts in the case of *Fidelity & Casualty Co.* v. *Industrial Commission,* 79 Utah 189, 8 P. 2d 617, 619, appear to more nearly approximate the facts of this case. The employee in that case was a delivery boy whose duties required him to stop each morning at a hotel and railroad station to pick up films that would later be developed by his employer. He was required to report to work at 8:00 a. m. and pickups were expected to be made before that time. While riding his bicycle to work at approximately 7:30 a. m. one morning, he collided with a streetcar and was fatally injured. The point of collision was about one and one-half blocks from his home. The hotel at which he would have made his first stop for his employer was some three miles distant. In that case, this court held the employee had not yet entered into his employment and applied the general rule that an employee on his way to work is not within the protection of the Workmen's Compensation Act. The court said in that case:

"At the time Edwin received the injuries which caused his death he was in no sense under the control of his employer. If the testimony of Mr. Peck is to be believed, his employment did not begin until he reached the Semloh Hotel. He was at perfect liberty to take whatever course he desired in reaching the Semloh Hotel. The time when he was to enter upon his employment had not yet arrived."

In the instant case, it is first necessary to locate decedent's place of employment and then to determine when the employer-employee relationship commenced. Wilson, the employer, testified that decedent was his foreman and might work at Wilson's Magna, Salt Lake City, Ogden or Phoenix shops. Wilson further testified that deceased had just recently been re-employed and during this period of re-employment he had worked only at the Magna shop; and, that decedent would have worked in Salt Lake City on the

afternoon of the day of his death had he returned with the automobile he had been directed to bring back. Even though decedent was foreman at any one or all of Wilson's shops, unless the contract of employment contemplated the employer-employee relationship would commence when deceased left his home, it would be necessary for the status to be created by some special mission enroute to work before deceased would be within the protection of the Workmen's Compensation Act. In view of the fact that during all of the time decedent had been on Wilson's regular pay roll as foreman, his work had been at the Magna shop, unless the trip on the morning of the accident was different from that on previous mornings and in the nature of a special mission, deceased's employment commenced at the time he arrived at that shop and not at the time he left his home in Salt Lake City. It, therefore, follows that if the instructions Wilson gave the decedent on the evening preceding the day of the accident merely outlined the duties deceased was expected to perform after he arrived at the Magna shop, then the employer-employee relationship would not come into existence until the deceased's arrival at the latter place.

In addition to being foreman for Wilson, deceased did repair work on the various automobiles that were brought into the shop. The car deceased was sent to return to Salt Lake City had been placed in the shop some time during the day, preceding the accident. It was in need of repairs and deceased, and perhaps other employees, were expected to do the necessary work to fix the car. Wilson's instructions to deceased were that he was to bring the car into Salt Lake City by noon or as near thereto as practicable on the day of the accident. Wilson did not know at the time of the conversation the state of repairs of the automobile, but testified that decedent understood that all necessary repairs were to be made before the car was returned. On the morning of the accident, decedent was proceeding to the Magna shop in the same way he had previously gone to work. He was entitled to select his own route, could travel by any means he desired,

and on the morning in question was a passenger in a car being driven by another employee. He had no duties to perform enroute and was expected to perform none until he arrived at the place of business in Magna. The time of departure from his home was not fixed. However, he was expected to be at the Magna shop at about 8:00 a. m. The employer did not change his usual hour of departure from home or change any pre-existing course of conduct and gave him no instructions as to how or when to proceed but merely prescribed that the car should be returned to Salt Lake City after it had been repaired. The employer did not attempt to exercise any control or supervision over the deceased and, from the state of the record, it would appear that the employer-employee relationship did not arise until the deceased had arrived at the shop. The record does not indicate that deceased was paid for travel time, that his hours of employment commenced at the time he left his home, or that the mission contemplated any special arrangements to take deceased out of the normal situation of starting his day's work upon arrival at the shop.

We believe the facts of this case are substantially similar to those involved in the *Fidelity & Casualty Company* action, supra, and that the employer's instructons in this instance merely directed the decedent as to what he should do after arriving at his place of employment. The instructions given did not send the deceased upon a special errand but merely outlined what would be expected of him in performing his duties the next day. The car had been taken to Magna for the purposes of repair, deceased was charged with either repairing the car or seeing that it was repaired, and it is obvious that someone had to be selected to return the vehicle from Magna. If any special errand was suggested by the conversation, it would be to drive the car to Salt Lake when the repairs were finished. If deceased was expected to perform any of the usual duties of his office before leaving Magna with the car, it appears that the instruction to return the automobile

before noon would be in the nature of orders to expedite the remaining repair work, and would in no way vary the relationship which had previously existed. No suggestion is made that the parties consider the employer-employee relationship to exist while the deceased was enroute to the shop on other mornings. The only change in the situation on this particular day was that deceased was required to have the car returned by a given time.

The award of the commission is annulled.

PRATT, C. J., and McDONOUGH, J., concur.

WADE, Justice.

I dissent.

I think the determining question here is one of fact which was decided by the commission in applicant's favor on uncontradicted evidence. Therefore we have no authority to set it aside.

The prevailing opinion seems to conclude that decedent was traveling to his regular work on the morning in question and was not on any special mission and therefore he did not come within the scope of his employment until he arrived at the employer's shop at Magna. In my opinion, the undisputed evidence is to the contrary. Mr. Wilson, the employer, was the only witness who testified as to the facts involved in this case. I concede that the evidence indicates that he was anxious that the family of his former employee should recover from the insurance carrier. But still, taking the evidence most strongly against a recovery, I think it is clear that decedent was on a special mission or errand and the employment commenced when he left home.

Wilson testified that decedent had worked for him off and on for about three years; that he was in the used car business and operated repair shops in connection therewith;

that he had four places of business, one at Salt Lake City, one at Ogden, one at Magna, in Utah, and one at Phoenix, Arizona. That decedent had not been working for him during the holidays but had returned to his employment the Monday before the accident which was on Thursday the 9th of January, 1947, that decedent's position was repair shop foreman and assistant manager; that his duties would take him on occasions to each of the various places of business as foreman over all of the repair shops. That from Monday to Wednesday evening before the accident, decedent had been working in Magna setting up the repair shop; that a repair man named Foote was working regularly at that place; that on Wednesday evening decedent reported to him that the work of setting up the repair shop was completed and asked him where he wanted him to work the next day. Wilson stated that he told decedent that he should go out to Magna the next morning and bring a car, which had been taken out there from Ogden the previous day, back to Salt Lake City and then spend the afternoon in the Salt Lake City shop. In a written statement on January 11, 1947, Mr. Wilson said that he sent decedent to Magna to work on a car there, but shortly thereafter he corrected that statement and said that he was to go and get the car at Magna and bring it to Salt Lake City. There is no question but what decedent was to bring the car to Salt Lake City, and to be there himself that afternoon, but there is a question as to whether he would have to make some repairs on the car before it could be brought back to Salt Lake City. If the car had not been repaired the night before, then some repairs would have had to be made before it could be brought back on its own power. There is also no question but that the next day decedent was expected to go to Ogden to look after some matters there, but the accident prevented that since deceased was killed in an automobile accident the next morning on his way to Magna with Foote in Foote's car.

Under these facts I think it is clear that this was a special mission or errand which the decedent was going on that

morning and that his work commenced when he left home. There is no question but what decedent was on his way to Magna to get a car and bring it back to the Salt Lake City place of business, and that he was expected to be in the Salt Lake City shop that afternoon. The only doubtful point is whether it would be necessary for some repairs to be made on the car before it could be driven to Salt Lake. The prevailing opinion seems to concede that if there were no repairs to be made then decedent was in the course of his employment at the time of the accident. But even conceding that there were some repairs to be made before leaving Magna, I think this was none the less a special mission. The object of going to Magna was to get that car and bring it to Salt Lake City. Decedent's regular job of setting up the repair shop in Magna was completed the night before. Magna was then not his regular place of employment but he was sent out there especially to get that car. His mission was to get the car back to Salt Lake City. If the car was stalled somewhere on the road and he was sent out to bring it in, it would be a special mission even though he was required to spend some time in making repairs before it would come in on its own power. I think the same is true in this case, and that decedent was filling a special mission when this accident occurred. I therefore dissent from a reversal of this award.

WOLFE, J., not participating.